MARILYN J. BLAIR, Widow, GARY CHARLES BLAIR, LARRY WARREN BLAIR and LINDA KATHLEEN BLAIR, Minors, *Appellees*, v. RALPH W. SHAW and LEONA M. SHAW, partners, doing business as SHAW CHEVROLET, Respondent, and MARYLAND CASUALTY COMPANY, Insurance Carrier, *Appellants*.

No. 38,431

LENA I. RITZ, Widow, KEITH G. RITZ, SANDRA SUE RITZ, and NORMAN C. RITZ, Minors, *Appellees*, v. RALPH W. SHAW and LEONA M. SHAW, partners, doing business as SHAW CHEVROLET, Respondent, and MARYLAND CASUALTY COMPANY, Insurance Carrier, *Appellants*.

No. 38,432

ELIZABETH M. TOWNSEND, Widow, and ROY E. TOWNSEND, Minor, *Appellees*, v. RALPH W. SHAW and LEONA M. SHAW, partners, doing business as SHAW CHEVROLET, Respondent, and MARYLAND CASUALTY COMPANY, Insurance Carrier, *Appellants*.

(233 P. 2d 731)

Opinion filed July 3, 1951.

*P. E. Nulton,* of Pittsburg, argued the cause, and *R. L. Letton,* of Pittsburg, was with him on the briefs for the appellants.

*Douglas G. Hudson,* of Fort Scott, argued the cause, and *Douglas Hudson* and *Howard Hudson,* both of Fort Scott, were with him on the briefs for the appellees.

The opinion of the court was delivered by

PRICE, J.: The question in these three consolidated workmen's compensation cases is whether the accidental injuries resulting in

the death of all three decedents arose out of and in the course of their employment as mechanics by the respondent Chevrolet dealer in Fort Scott, Kansas.

Both the Commissioner and trial court held that the fatal injuries were compensable, and from such rulings the respondent and its insurance carrier have appealed.

The factual background, concerning which there is no material dispute, is as follows:

The respondent, Shaw Chevrolet, is a partnership consisting of Ralph W. Shaw and his wife, Leona, and it owns and operates the Chevrolet dealership and garage at Fort Scott, having purchased it from the Townsend Chevrolet in March, 1950. It continued the operation of this agency and garage at the same location, with the same personnel, and under the same policies as the business had been conducted by its predecessor. Decedents Blair, Ritz and Townsend had been employed as mechanics at this Chevrolet garage for two, five and four years, respectively, and stayed on as mechanics for respondent when it purchased the agency.

Throughout the state of Kansas, and perhaps all over the country, it has been the policy and custom of the Chevrolet Division of General Motors Corporation to give an annual examination for automobile mechanics employed in the various Chevrolet agencies. This practice has existed for at least fifteen years and is well-established. The annual examinations are known as "approved mechanics' examinations" and cover information contained in bulletins, shop manuals and other data put out throughout the year by the Chevrolet Division of General Motors Corporation. A mechanic passing such written test receives a certificate or "diploma," which in many instances is displayed in the shop where he is employed. It is generally recognized that a mechanic who has passed these tests is better able to secure employment, and, at the same time, the employer is thus able to advertise that it has "factory-trained mechanics." Such was the case here.

For a number of years the written examinations conducted by the parent Chevrolet Division in the district in which Fort Scott is located had been given in the Besse Hotel at Pittsburg, Kansas, some thirty miles south of Fort Scott. Each of the three decedents had taken the examination in previous years—in fact, to do so had become so common and accepted as to amount to a custom. Me-

chanics expected to take these examinations, and their employers also expected them to do so.

In the early part of April, 1950, Mr. Shaw, of the respondent, received a letter from the district manager of the Chevrolet Division advising that the examination would be given at the Besse Hotel in Pittsburg on the evening of April 18. When Mr. Shaw received this communication he handed it to his shopforeman Ritz (one of the decedents), and in substance told him, "Here is your information on the time and place of the meeting," or, "Here is your information on the mechanics' examination meeting," and that, "You'd better get together with the boys and decide how you are going." He did not instruct Ritz or any of the other mechanics that they had to go, and, in fact, no definite instructions one way or the other were given. It just appears that all parties concerned assumed and expected all of respondent's mechanics to attend and take the examination.

On the evening of April 18, Blair, Ritz and Townsend worked at respondent's garage until about the usual quitting time, five o'clock, and then each went to his respective home for the evening meal. Between six and six-thirty o'clock that evening Townsend, driving his own automobile, picked up Blair and Ritz, and the three of them left for Pittsburg in Townsend's car. They arrived safely in Pittsburg and took the examination. Respondent, as such, had nothing to do with the giving of the examination, and Mr. Shaw was not present. 113 mechanics, employed by 26 Chevrolet dealers, from 26 different towns in the area, took the examination, including all six mechanics employed by respondent, the other three having gone to Pittsburg in another car. The examination was over by nine oclock, or shortly thereafter, and decedents were last seen in the hotel lobby. At about 10:50 p. m. the automobile in which they were returning to Fort Scott was involved in a collision with a truck on U. S. Highway No. 69, about four miles south of Fort Scott. All three died as a result of their injuries. This highway was the direct and regular route between Pittsburg and Fort Scott. Bus and train schedules between the two towns were such that travel by private automobile was the only feasible and practical means of transportation, under the circumstances and at the time in question.

Each of the three decedents worked for respondent at a weekly wage, and there was no precedent, agreement or understanding

that they were to be paid any compensation by way of overtime, or otherwise, for the trip in question. Before leaving Fort Scott, however, Townsend drove to a gasoline filling station at which respondent maintained a charge account and purchased five gallons of gasoline, which he charged to respondent through a prearranged understanding. Respondent later paid for this gasoline.

The Commissioner and the lower court held that the accidental deaths were compensable, made an award in each case in favor of the surviving widow and minor children, and from such rulings these appeals have been taken. What is said, both with reference to the facts and the law, applies equally to each of the three cases, and they will be treated as one.

In support of their position appellants advance a number of arguments, but, in the main, it may be said their contentions are (1) that the trip to Pittsburg to take the examination cannot be said to be a part of decedents' employment so as to bring them within the provisions of the Workmen's Compensation Act which require that in order to be compensable an injury must arise out of and in the course of employment, and (2) even assuming, for the sake of argument, the taking of the examination be held to be an incident of, or a part of their regular employment within the meaning of the act, still, after the examination was completed the "employment" was ended and that after they had started home to Fort Scott they had left the duties of their employment and compensation would be barred under the provisions of G. S. 1949, 44-508 (k), which read:

"The words 'arising out of and in the course of employment' as used in this act shall not be construed to include injuries to the employee occurring while he is on his way to assume the duties of his employment or after leaving such duties, the proximate cause of which injury is not the employer's negligence."

Here there is no question concerning negligence on the part of respondent employer, and so we are confronted solely with the question whether these fatal injuries arose out of and in the course of employment within the meaning of the act.

Was the trip to Pittsburg to take the examination a part of decedents' employment so that it can be said the fatal injuries sustained by these three mechanics arose out of and in the course of their employment by respondent? If, so, was there a causal connection or relationship between such employment and the accidental injuries resulting in their deaths?

It is perhaps true that in compensation cases, more so than in other types of litigation, no two sets of facts and circumstances are

precisely similar. That is true here. Counsel for neither side have cited, and our limited search has failed to disclose, any reported case dealing directly with the specific question involved under facts closely analogous to those before us. As a result, resort to decisions urged in support of their position by appellants, among them being *Repstine v. Hudson Oil Co.*, 155 Kan. 486, 126 P. 2d 225; *Covert v. John Morrell & Co.*, 138 Kan. 592, 27 P. 2d 553; and *Rush v. Empire Oil & Refining Co.*, 140 Kan. 198, 34 P. 2d 542, really throws little light on the question.

Looking at this matter from the over-all picture, it seems clear to us that the lower court was correct in concluding the annual trip to Pittsburg to take the examination was actually contemplated by the very employment itself. Each of the decedents, as well as their fellow mechanics, had taken the examination in previous years. Such practice was prevalent throughout the territory. It is true that in passing the examination benefit would accrue to the mechanic, but it is also true that it resulted in considerable benefit to the employer. In this day and age such matters are of common knowledge. The decedents went to Pittsburg with the knowledge and consent of their employer, on gasoline furnished by it. While the evidence does not show they were specifically directed or instructed to go, yet it is clear the annual trip to Pittsburg to take the examination was so well-established as to amount to a custom of the employment. Mechanics expected to take the examinations and knew that their employers expected them to do so. We have no difficulty in concluding that the trip to Pittsburg to take the examination was, under all of the facts and circumstances disclosed by the evidence, incidental to and actually a part of decedents' employment within the meaning of the compensation act, and therefore that their fatal injuries arose out of and in the course of their employment. While factually dissimilar, see *Kearns v. Reed*, 136 Kan. 36, 12 P. 2d 820; *Stapleton v. State Highway Comm.*, 147 Kan. 419, 76 P. 2d 843; *Mitchell v. Mitchell Drilling Co.*, 154 Kan. 117, 114 P. 2d 841; and *Hilyard v. Lohmann-Johnson Drilling Co.*, 168 Kan. 177, 211 P. 2d 89, on the general subject.

This brings us to appellants' second contention, namely, that even though the taking of the examination be held to be an incident of and a part of the employment, still, once the examination was completed such "employment" would be concluded, and that after decedents had started home to Fort Scott they had thus

left the duties of their employment within the meaning of 44-508 (k), *supra*. In support of this argument they rely chiefly upon *Abbott v. Southwest Grain Co.*, 162 Kan. 315, 176 P. 2d 839, and *Pearson v. Electric Service Co.*, 166 Kan. 300, 201 P. 2d 643, both of which dealt with this provision of the statute. In the Abbott case it was held that where one who was employed as a helper in an elevator, with no regular hours of employment, had quit work at night but later in the evening of the same day, while on the way from his home to the elevator under instructions from his employer to close some grain bin doors, sustained injury on the highway before arriving at the premises on which the elevator was located, was not entitled to compensation because the injury occurred while he was on his way to assume the duties of his employment. In the Pearson case it was held the claimant was not engaged in her work as secretary and treasurer, or as assistant office manager, at the time of her injury, and further, that she was merely traveling from a point in Illinois to Memphis, Tenn., to assume her duties.

It is always difficult to draw analogies or distinctions between a given set of facts in issue and other facts in hypothetical illustrations suggested by counsel without, perhaps, in some way "attempting to cross a bridge before you get to it." For instance, counsel for appellants ask what the situation would be if the examination had been held in respondent's garage, or in a hall in Fort Scott, and one of the mechanics had been injured in a traffic accident on his way to his home after taking the examination. One answer, of course, is that we are not here called upon to decide that question—but, nevertheless, we think there is a considerable distinction to be drawn between that situation and the one before us.

Having concluded that the trip to Pittsburg to take the examination was a part of the employment, it seems entirely logical to conclude that the entire undertaking is to be considered from a unitary standpoint rather than divisible. To take the examination it was necessary for decedents to make the round trip to Pittsburg. That involved travel by private automobile—going and returning—one project, so to speak, and included the normal traffic hazards inherent in such an undertaking. The act does not require that the injury be sustained on or about the employer's premises. We think appellants' contention that the "employment" was concluded the moment decedents finished the written examination and laid down their pencils is too narrow, particularly in view of the liberal con-

struction of the act to which the workman is entitled under our many decisions.

In conclusion, we hold that under all of the facts and circumstances of the case, the lower court was correct in ruling that the trip to Pittsburg to take the examination was an integral part of the employment, and that at the time and place in question decedents had not left the duties of such employment within the meaning of G. S. 1949, 44-508 (k).

The judgment of the lower court is in each case affirmed.

WEDELL, J., dissents.