No. 42,927

Jennie L. (Middleton) Whitely, Guardian of Richard Lewis Middleton and Robert Edward Middleton, Minor Dependents of Edward R. Middleton, Deceased, *Appellants*, v. King Radio Corporation, Inc., and Queen Insurance Company, *Appellees*.

(375 P. 2d 593)

Opinion filed November 3, 1962.

*Max W. Foust*, of Kansas City, Missouri, argued the cause, and *Russell D. Jacobson*, of Kansas City, Missouri, *Bernis G. Terry*, of Olathe, and *Phillip L. Woodworth*, of Mission, were with him on the briefs for appellants.

*John J. Alder*, of Kansas City, argued the cause, and *Kenneth B. Wallace*, of Mission, was with him on the briefs for appellees.

The opinion of the court was delivered by

Fatzer, J.: In this workmen's compensation case the examiner found that the accident in which the claimant's decedent was killed did not arise out of and in the course of his employment with respondent, and denied an award of compensation. Upon appeal and review of the record, the district court adopted the findings of the examiner as approved by the workmen's compensation director and denied an award in favor of the claimants. Hence, this appeal.

The parties stipulated to the usual preliminary features of a com-

pensation case such as employment, being under the Act, notice of the accident, demand for compensation, amount of wages; also, that the decedent, Edward R. Middleton, died in an airplane crash on December 19, 1960, in Johnson County, Kansas, and that the two minor children, claimants herein, were at the time of the accident total dependents of the decedent, the widow of the decedent having remarried. No point is urged as to the fact that decedent met with personal injury by accident, so, the serious question presented is the sufficiency of the evidence to sustain the district court's finding that the accident did not arise out of and in the course of the employment.

The evidence disclosed that respondent, King Radio Corporation, Inc., was in the business of manufacturing and developing aircraft radio equipment. Edward J. King was president and principal stockholder, James R. Harris was vice president in charge of manufacturing with a background in accounting, Wallace Wiley was chief electrical engineer, and Edward R. Middleton was design engineer, working under Wiley's direction in the Engineering Department.

Middleton was employed by respondent during the spring of 1960 and continued to work in that capacity until the date of his death. There was some discussion at the time he was being interviewed for employment by Wiley that it might be desirable from the standpoint of prestige if the engineers were pilots themselves. When Middleton was interviewed by King, there was discussion of flying in general but no discussion relative to Middleton becoming a pilot or taking flying lessons. The specifications of design engineer did not require that he be a pilot, and becoming a pilot or taking flying lessons was not a condition of his employment. There was no plan for respondent to have its engineers qualify as pilots, although the subject was discussed by the officers of the company. Middleton went up in an aircraft on one or two occasions to test equipment in flight, but did not act as pilot on those occasions. It was not feasible for an engineer to perform his duties as an engineer in flight and also act as pilot.

During 1960 Harris took flying lessons which were paid for by respondent. However, Harris discontinued his lessons in the fall without qualifying as a pilot. Respondent offered to pay for flying lessons for Wiley, but he refused to take lessons.

About two months after Middleton entered respondent's employment, he asked King if respondent would pay for flying lessons for him as they were doing for Harris. King contacted Wiley, Middle-

ton's supervisor, and Wiley had no objection so long as the lessons would not detract from Middleton's work. King and Wiley felt that perhaps a closer association would increase Middleton's enthusiasm for his work which appeared to be somewhat lacking. King thereafter agreed that the company would stand the "financial cost of the flying lessons. He (Middleton) was to get his own textbooks and be on his own time, but so far as paying for the lessons, we would do so." Harris called Skyway, Inc., and made arrangements for Middleton's flying lessons. Skyway was selected on the basis of being most convenient. Subsequently respondent paid approximately $585 for Middelton's flying lessons, which were continuing at the time of the fatal accident.

Middleton was unable to obtain physical clearance in Kansas City for flying, and was allowed to make a trip to Washington, D. C., on regular company business so that while there he could attempt to secure physical clearance for flying from the Federal Aviation Agency for a private pilot's license, which approval was secured.

After Middleton had commenced his flying lessons, he made one flight to Columbia, Missouri, on company business. He was advised by Harris not to take another similar trip he had planned because it was a violation of F. A. A. rules for a student pilot to take business flights.

It was Middleton's procedure to work from 7:30 a. m. to 4:30 p. m. on days when he took flying lessons, so he could get an early start on his flying. Normal company hours were from 8:00 a. m. to 5:00 p. m. On the day of the accident Middleton was at work sometime before 8:00 a. m. and left work at about 4:40 or 4:45 p. m.

In reviewing the record in a workmen's compensation case our task is to determine whether there is any evidence which supports the judgment rendered, and if there is any evidence to support the judgment, it must be affirmed even though the record discloses evidence which might warrant the district court making a finding to the contrary (*Kafka v. Edwards,* 182 Kan. 568, 322 P. 2d 785; *Allen v. Goodyear Tire & Rubber Co.,* 184 Kan. 184, 334 P. 2d 370; *Heer v. Hankamer Excavating Co.,* 184 Kan. 186, 334 P. 2d 372). The rule applies with equal force whether compensation has been allowed or denied by the district court (*Rorabaugh v. General Mills,* 187 Kan. 363, 356 P. 2d 796).

At the time of the accident and death was Middleton performing a service required by his contract of employment, directly or incidentally? There was substantial evidence that he was not. He

was hired to do electrical design work on a regular salary eight hours a day. He was neither required to take flying lessons or urged to take them to perform his actual or anticipated job, nor was there a company custom or practice that he do so. His job was on the ground in the laboratory. The lessons were taken on his "own time" —in the evenings, Saturdays and Sundays. Flying was not a requirement or a condition of his job, and on the evening of his fatal flight he was doing nothing for respondent. He took the lessons only on condition they did not detract from his work.

Claimants rely heavily on *Blair v. Shaw*, 171 Kan. 524, 233 P. 2d 731. We think it is not helpful to them. There, the "approved mechanics' examinations" given annually by the Chevrolet Division of General Motors was so well established as to amount to a custom of employment; also, the Chevrolet mechanics expected to take the examination and knew that their employers expected them to do so. It was concluded the examinations and trips there involved were "incidental and actually a part of the decedents' employment"; that they were "actually contemplated by the very employment itself."

The phrase "arising out of" the employment points to the cause or origin of the accident and requires some causal connection between the injury and the employment. An injury arises out of the employment if it arises out of the nature, conditions, obligations, or incidents of employment (*Pinkston v. Rice Motor Co.*, 180 Kan. 295, 302, 303 P. 2d 197, and cases cited).

There was no evidence that Middleton had a duty or was performing a duty for the company at the time of his accident and death. On the contrary, there was specific evidence by the president, vice president and chief engineer that he had no duties with respect to flying in connection with his regular hire. He was not acting within the scope of his employment when killed; his death did not follow as a natural incident from the work he was then employed to do, or have its origin in a risk connected with that employment.

The burden of proof was upon the claimants to show a causal connection between the conditions under which the work was required to be performed and the accident causing death. The district court found that they had not sustained that burden, and there was substantial evidence to support the finding.

The judgment is affirmed.

WERTZ, J., dissents.