Emmer L. LOGGINS, Petitioner,

v.

**WETUMKA GENERAL HOSPITAL, State Insurance Fund, and the State Industrial Court, Respondents.**

**No. 51084.**

Supreme Court of Oklahoma.

Nov. 28, 1978.

2. *Roberts v. Jack Richards Aircraft Co.*, Okl., 536 P.2d 353 (1975).

Jack D. Crews, Ash, Shamas & Crews, Tulsa, for petitioner.

Thomas A. Massey, Oklahoma City, for respondent Wetumka Gen. Hospital.

Sam Hill, Richard G. Mason, Oklahoma City, for respondent State Ins. Fund.

HARGRAVE, Justice:

A trial judge's denial of claim for compensation, because alleged injury did not arise out of and in course of employment, was affirmed on en banc appeal. Petitioner-claimant seeks review and vacation of this order of denial.

Claim alleged accidental injury (March 17, 1976) while attending an emergency medical training course. Respondents filed general denial, and specifically alleged any injury occurred during involvement in a training course entirely unrelated to respondent hospital, and engaged in by claimant voluntarily and on her own time and expense, including travel to teaching sessions.

The issue is whether injury which occurred while attending a federally funded training program arose out of and in course of employment as reasonably incident to the employee's duties and of indirect benefit to respondent hospital.

The case was heard (August 26, 1976) for determination of temporary total benefits, the issue of permanent partial disability being reserved. The parties stipulated jurisdictional facts. Although conflicting in certain aspects, matters hereafter noted fairly reflect factual background from which this claim arose.

Establishment of an effective first aid system for Oklahoma was created under auspices of American Trauma Society. A fifteen county pilot program called Southeast Area Medics was created through a federal grant. Among other requirements, qualification under the grant required availability of personnel trained as emergency medical technicians. A Wetumka ambulance service operator (Huckleberry) had difficulty operating for lack of trained attendants, and learned his service could qualify if as many as sixteen persons would enroll in the training course being taught in that area by Seminole Junior College. Huckleberry got in touch with the program director (King) who was teaching this course under a separate government grant, and applied directly through the college for the training course, and also devoted some

effort to interest people in the course. This course basically encompassed road emergency training used by police, firemen and ambulance employees, and involved different equipment from that in hospital emergency rooms.

Inauguration of the program was discussed with respondent's chief of staff, who advised fire department, police department, hospital employees, and any other interested citizens the program was available. The training was for teaching first aid techniques, and was not training required for nurses aides in a hospital, although some techniques might be useful. Respondent hospital was not instrumental in securing the program for Wetumka, and did nothing to support the program initiated.

Claimant, employed by respondent as a Licensed Practical Nurse since 1969, learned of this training course being taught in Seminole. Claimant insisted she was notified of the class by her supervisor (Starnes), who indicated those who could attend should do so, in order to become licensed to perform some services already being done in the hospital. The supervisor indicated the work schedule could be switched to allow claimant to attend classes. The hospital would pay her tuition and the supervisor asked claimant to attend. Completion of the course would not provide promotion or pay raise and was not required for job retention. The supervisor encouraged claimant to attend as a means of being licensed to perform certain things done at the hospital, i. e., although already administering intravenous injections under supervision, she would be licensed to do this upon completing training; instructions in emergency training could be applied in hospital emergency room.

In final analysis, claimant's position is that attendance of the emergency medical training course furthered respondent's interest and was of direct benefit to the hospital.

From this premise, claimant insists review of the evidence demonstrates this training course enhanced participant's knowledge in at least three areas of the nurses' employment: (1) administration of intravenous injections; (2) childbirth under emergency conditions either in hospital emergency room or elsewhere; (3) proper administering or monitoring of intravenous injections in an ambulance emergency. Thus, instruction in these special fields enhanced medical services to the community, and provided direct or indirect benefit to respondent from education of employees in emergency health care, whether rendered in an ambulance or the hospital emergency room.

■  Some evidentiary factors initially advanced, i. e., respondent's urging claimant's attendance and payment of tuition, were conclusively controverted and are not presented on review. For this reason, only evidence relating to three factors is of concern. On review of State Industrial Court orders, or awards, Supreme Court does not weigh evidence to determine preponderance thereof, but examines the record only to ascertain whether the order reviewed is supported by any competent evidence.

■  However, in some cases the issue not only involves factual determination based upon conflicting evidence, but also may involve issues which are mixed questions of fact and law. Factual determinations are not reviewed independently if supported by any competent evidence, but conclusions of law made thereunder are reviewable by this Court on review. See *Munsingwear, Inc. v. Tullis*, Okl., 557 P.2d 899 (1976), wherein a mixed question of fact and law as to application of statute of limitations was reviewable as a conclusion of law. And, an issue as to existence of employer-employee relationship requires independent review by Supreme Court to determine whether facts disclosed by conflicting evidence are sufficient to establish existence of the relationship as a matter of law. *Fluor Engineers & Contractors, Inc. v. Kessler*, Okl., 561 P.2d 72 (1977).

Admittedly, injuries alleged did not *arise out of course of the employment*. That requirement of our Act, 85 O.S.1971 § 2, 3(7), 11 refers to time, place and circum-

stances. *Hegwood v. Pittman*, Okl., 471 P.2d 888 (1970); *Belscot Family Center v. Sapcut*, Okl., 509 P.2d 905 (1973). Thus any ground for determining compensability must arise from application of the "indirect benefit" theory, that benefit accrued to respondent by claimant receiving emergency training in the areas mentioned.

A notable factor negates claim of benefit accruing to respondent from this training. Licensed practical nurses could not administer injections except under supervision of a registered nurse. Only claimant testified license from emergency medical training would qualify the licensee to perform this duty. Nothing in this record supports this claim, or intimates an emergency training license would waive restrictive provisions of licensure for licensed practical nurses, and authorize claimant to perform this service for respondent. License issued claimant for emergency medical training could not have benefited respondent absent proof this license supplanted limitations of a LPN license, by expressly permitting this to be performed in respondent hospital.

The same distinction applies to claimed benefits resulting from training in emergency childbirth, application of tourniquets, etc. Uncontroverted evidence showed first aid techniques were taught in LPN's formal training, and most nurses either had received this training or were trained in the hospital.

Claimant cites decisions in *Richey v. Commander Mills, Inc.*, Okl., 521 P.2d 805 (1974) and *City of Bartlesville v. Inman*, Okl., 565 P.2d 363 (1977), and text questions, Larson's Workmen's Compensation Law, Vol. 1, §§ 20, 27, to support argument either direct or indirect benefit accrued to respondent from claimant's training. Both decisions recognized and applied the principle that injury was work related if the employer's purposes were being carried out, or employer's interests were being directly or indirectly advanced.

We do not consider either decision supportive of claimant's argument. Each involved injury incurred while engaged in acts necessary for life, comfort, and convenience of the employee. The underlying principle is that strictly personal acts, while not acts of service, are incidental to the employer's service and inevitable incidents contemplated by the work. Thus, injuries occasioned thereby clearly arise out of and in course of employment. The issue is discussed at length in *Richey*, supra. Voluntary attendance in an emergency medical training course cannot be categorized as an act of personal comfort and convenience contemplated by the employment, under the cited cases.

The text rule from Larson's, supra, is to the effect activity is work-related if the employer's purposes are carried out or his interest directly or indirectly advanced. And, a good faith effort made outside regular duties to advance employer's interests, although assigned duty is not furthered, is within course of employment. These general rules stated in §§ 20, 27, are limited by further text expression in § 27:31(a).

"When an employee, by undertaking educational or training programs, enhances his own proficiency in his work, he does in a sense benefit his employer. On the other hand, self-improvement is primarily the employer's own concern; obviously the ambitious clerk who is burning the midnight oil studying to become an accountant cannot expect workmen's compensation if his lamp blows up. In some situations, however, it may be found that, either by the contemplation of the contract or by custom, the educational activity is part of the employment."

" * * * If the factor of wage and tuition payment is completely absent, the connection with the employment may fail, even when the training or education is made a condition or promotion or even of continued employment."

See *Whitely v. King Radio Corporation*, 190 Kan. 439, 375 P.2d 593 (1962), where employer paid for flying lessons, although employee neither was required nor urged to take lessons.

To establish injury as arising out of employment, causal connection between employment and injury must be shown. An act leading to injury must be part of the duty an employee was hired to perform, or reasonably incident thereto. *Estate of Smith v. Hearon*, Okl., 424 P.2d 970 (1967). Injury does not arise out of the employment unless a result of the nature, conditions, obligations or incidents of employment. *Belscot Family Center v. Sapcut,* supra; *International Spa v. Jones*, Okl., 525 P.2d 630 (1974).

The emergency medical training course was disassociated from respondent's hospital. Attendance was entirely of claimant's own volition, on her own time and expense. Respondent acquiesced in employee's participation, but did not recruit for the program or urge attendance. Training would enhance participant's proficiency in first aid procedures outside hospital, but would not be basis for salary increase or promotion. Injury allegedly incurred during training course did not arise out of and in course of employment under theory of direct or indirect benefit to the employer, not having resulted from nature, obligations, or a necessary incident of employment. State Industrial Court was correct in denying award.

ORDER SUSTAINED.

HODGES, C. J., LAVENDER, V. C. J., and WILLIAMS, IRWIN, BARNES and DOOLIN, JJ., concur.