No. 44,149

ANN BIENZ, Administratix of the Estate of Carl L. Dehmer, Jr., Deceased, *Appellant,* v. JOHN HANCOCK MUTUAL LIFE INSURANCE COMPANY, *Appellee.*

(407 P. 2d 222)

Opinion filed November 6, 1965.

*Benjamin Foster,* of Wichita, argued the cause, and *Kenneth F. Beck,* of Wichita, was with him on the briefs for appellant.

*Henry V. Gott,* of Wichita, argued the cause, and *W. F. Lilleston, George C. Spradling, George Stallwitz, Ralph M. Hope, Ronald M. Gott, Glen D. Young, Jr.,* and *Edward H. Graham,* all of Wichita, were with him on the briefs for appellee.

The opinion of the court was delivered by

FATZER, J.: This was an action brought by the plaintiff-appellant, administratrix of the insured's estate, to recover death benefits in the sum of $5,000 from John Hancock Mutual Life Insurance Company under a group accident and health insurance policy. The insurance policy provided that no payment should be made for any loss of life caused by "injuries arising out of and in the course of employment for wage or profit." Trial was by the court which made findings of fact and found in favor of the defendant-appellee. No posttrial motions were filed and judgment was rendered for the defendant. The plaintiff has appealed.

On April 29, 1962, Carl L. Dehmer, Jr., his wife, and two other passengers, were killed near Fountain City, Indiana, while Dehmer was flying his personal airplane.

Dehmer and Bion A. McBride were partners in the construction business, doing business under the firm name of McBride & Dehmer Construction Company, of Wichita, Kansas. In the fall of 1961, Dehmer obtained a subcontract for foundations and concrete work on a construction job which General Engineering Corporation, of Sapulpa, Oklahoma, had with the Mennel Milling Company, to construct railroad scales and grain unloading facilities at Fostoria, Ohio. Lloyd Clifton and Robert Ivers were president and vice-president, respectively, of General Engineering, and Ivers was a personal friend of Dehmer. It was through Ivers that McBride & Dehmer obtained the subcontract on the Mennel job. McBride & Dehmer commenced their work on the Mennel job about January 1, 1962. Ivers and Dehmer made several trips to Fostoria during construction to check on the progress of the work. About the end of April, 1962, McBride & Dehmer's work neared completion. Several small items were to be finished, and McBride & Dehmer had submitted a statement for extra work done and which needed to be discussed and adjusted before the job was accepted by General Engineering and the Mennel Milling Company.

On Monday or Tuesday of the week preceding April 29, 1962, James A. Toombs, supervisor for McBride & Dehmer on the Mennel

job, called Dehmer and asked him to come to Fostoria to inspect the job and finalize the contract. Dehmer contacted Ivers and both agreed that Saturday, April 28, 1962, would be a suitable date for their meeting at Fostoria to discuss extra work done by McBride & Dehmer as well as work which remained to be done. This date was desirable to Donald H. Mennel, president of Mennel Milling Company.

On Friday morning, April 27, 1962, Dehmer and his wife left Wichita in Dehmer's private plane and picked up Ivers and his wife at Tulsa, Oklahoma, and flew to Columbus, Ohio. They were met at the airport by John Cavallero and his wife, friends of the Dehmers, who took both couples to their home where they visited for several hours. The Dehmers and Ivers drove Mrs. Cavallero's car to a motel where they spent the night. On Saturday morning, April 28, 1962, Dehmer and Ivers drove Mrs. Cavallero's car to the airport where Dehmer had left his plane the night before, and flew to Fostoria, some 90 miles north and west of Columbus. Upon arrival at Fostoria, a meeting was held at the Mennel Milling Company, which started around noon and lasted two or three hours. Ivers and Chet Hosley represented General Engineering. Dehmer and Tooms represented McBride & Dehmer, and Mennel and two other officers represented the Milling Company. The charge for extra work amounting to something in excess of $1,000 was discussed and it was mutually adjusted. Other work had to be done after April 28, to keep out water seepage, leveling of the unloading platform, and work on the control room and scale beam.

At the conclusion of the meeting, Dehmer and Ivers left Fostoria in Dehmer's plane for Columbus to join their wives. About 7:30 Saturday evening the Cavalleros picked up the Dehmers and the Ivers for dinner. The Dehmers and the Ivers stayed at the motel on Saturday night, and on Sunday morning they went to the Cavallero's home for coffee. About noon they were driven by the Cavalleros to the Columbus airport. On their return to Tulsa and Wichita, the plane crashed and all were killed.

Dehmer had previously used the same airplane on partnership business and had flown it to Fostoria in connection with the Mennel job on two previous occasions, one of which he had been accompanied by Ivers. The partnership of McBride & Dehmer paid for the insurance on the plane and for the gasoline it used and the expenses of Dehmer's previous trips to Fostoria.

After hearing the evidence, the argument of counsel, and examining the authorities submitted, the district court found:

"(1) That the insured, Carl L. Dehmer, Jr., was on a business trip at the time his plane crashed, in which he was killed;

"(2) That said accident and death arose out of and in the course of the insured's employment for wage or profit; and

"(3) That the defendant's rejection of the claim was not without just cause or excuse."

In her brief, the appellant states:

"The only issue . . . is whether or not Carl L. Dehmer, Jr., suffered injuries resulting in his death, which injuries arose out of and in the course of employment for wage or profit. . ."

The parties are agreed that the burden of proving the issue whether Dehmer's death arose out of and in the course of his employment rests entirely upon the defendant. While the plaintiff must prove that the decedent's death was caused by accidental means, which was conceded, the defendant must show that the circumstances surrounding his death came within the exclusion clause in its policy. In *Sears v. Insurance Co.*, 108 Kan. 516, 196 Pac. 235, it was held:

"Where an accident insurance company seeks to avoid liability because of a specific exception to its general liability under the terms of its policy, and on the ground that the accident and injury were within such exception, the burden of proof rests upon the insurance company to show that the facts of the case fell within the exception clause in the policy which relieved the company from liability." (Syl. ¶ 1.)

The appellant contends that in determining whether a particular injury "arose out of and in the course of employment" within the meaning of the exclusion clause of the defendant's policy, this court should apply the construction it has placed on that phrase in cases involving claims under our Workmen's Compensation Act. We think there is merit to the contention.

Our Workmen's Compensation Act (K. S. A. 44-501) provides that in order to be compensable an accidental injury must "arise out of and in the course of" the employment. The terms "arising out of" and "in the course of" the employment have, by judicial decision, acquired definite meanings which are generally recognized. It has been held they are used in the conjunctive and both conditions must exist with respect to the application of the statute. In *Pinkston v. Rice Motor Co.*, 180 Kan. 295, 303 P. 2d 197, they were defined as follows:

"The term 'in the course of' employment as used in G. S. 1949, 44-501 relates to the time, place and circumstances under which the accident occurred;

and means the injury happened while the workman was at work in his employer's service. If personal injury by accident befalls a workman while he is doing what a man so employed may reasonably do within a time during which he is employed, and at a place where he may reasonably be during that time, the injury occurs 'in the course of' employment.

"The term 'arising out of' employment as used in G. S. 1949, 44-501 points to the cause or origin of the accident and requires some casual connection between the injury and the employment. An injury arises out of employment if it arises out of the nature, conditions, obligations or incidents of employment." (Syl. ¶¶ 3, 4.)

When those terms are used in a group insurance policy, as here, we see no reason to doubt that they were intended to have the same meaning which they have in our Workmen's Compensation Act. The words "for wage or profit" refer only to the kind of employment out of and in the course of which the injury must arise. They serve to emphasize the requirement in our Workmen's Compensation Act that the employment must be under a contract for hire. (*Towle v. John Hancock Mutual Life Ins. Co.*, 333 Mass. 345, 130 N. E. 2d 685.) We are of the opinion that the phrase as used in the exclusion clause of the defendant's policy was intended to exclude from the benefits of the policy persons whose claims might be based on injuries compensable under the Workmen's Compensation Act. In the instant case, the group insurance policy was designed primarily for employees of McBride & Dehmer, and the fact that Dehmer was not an employee makes no difference. The certificate covering him was issued under and subject to the terms of the group insurance policy.

It should here be stated that in the many cases where this court has applied the terms "arising out of" and "in the course of" the employment as used in our Workmen's Compensation Act, it has uniformly held that the scope of appellate review is limited to "questions of law," which in the final analysis, simply means that it is the duty of the Supreme Court to determine whether the district court's factual findings are supported by substantial, competent evidence. (*Kafka v. Edwards*, 182 Kan. 568, 322 P. 2d 785; *Whitely v. King Radio Corporation, Inc.*, 190 Kan. 439, 375 P. 2d 593.

We turn to the appellant's contention that there are at least three reasons why the judgment of the district court cannot be sustained. First, that the evidence was insufficient to establish that Dehmer's death arose "out of and in the course of employment" arguing that the deceased was not at a place where his employment took him at the time of his death and that his death did not follow as a natural incident from his work. Second, that Dehmer's death did not arise

out of and in the course of his employment for the reason that while there was evidence Dehmer's trip had some business purpose insofar as he was concerned, the main purpose of the trip was personal and social and the company business was merely incidental thereto. And third, that even if it is assumed that Dehmer's trip was a business trip, the business had been concluded prior to his accidental death and this compels a ruling that his death did not arise out of and in the course of his employment.

The question presented is simply drawn. Was there substantial evidence to support the district court's finding that Dehmer was on a business trip at the time his plane crashed? Or, to restate the question, was there substantial evidence to establish the necessity for Dehmer to travel to Fostoria, Ohio, to inspect the work and finalize the contract? The appellant argues that the general rule with respect to a dual-purpose trip such as she contends Dehmer was on, is that where the primary purpose of a trip is personal and social and business is accomplished which is merely incidental thereto, an injury which occurs on the trip is not one that arises out of and in the course of employment. In *Tompkins v. Rinner Construction Co.*, 194 Kan. 278, 398 P. 2d 578, which was decided after the appellant's brief in this case was filed, this court adopted the formula stated by Chief Judge Cardozo in *Matter of Marks v. Gray*, 251 N. Y. 90, 93, 167 N. E. 181, 183, which Larson said, when rightly understood and applied, has never yet been improved upon." (Vol. 1, Larson, Workmen's Compensation Law, § 18.12 *et seq.*) Larson then quotes the following from the *Marks* case.

"'. . . We do not say that service to the employer must be the sole cause of the journey, but at least it must be a concurrent cause. To establish liability, the inference must be permissible that the trip would have been made though the private errand had been canceled. . . . The test in brief is this: If the work of the employee creates the necessity for travel, he is in the course of his employment, though he is serving at the same time some purpose of his own. . . . If, however, the work has had no part in creating the necessity for travel, if the journey would have gone forward though the business errand had been dropped, and would have been canceled upon failure of the private purpose, though the business errand was undone, the travel is then personal, and personal the risk.'"

Under the dual-purpose rule as stated in the *Tompkins* case, it is evident appellant's claim that Dehmer's primary purpose in making the trip to Fostoria was for pleasure, is not relevant. There is no need to weigh the business and personal motive to determine which is dominant. Mr. Justice Cardozo used no such language. He said

it was sufficient if the business motive was a "concurrent cause" of the trip. He then defined "concurrent cause" by saying that it meant a cause which would have occasioned the making of the trip even if the private mission had been canceled. Larson states one detail must be stressed to make this rule complete: it is not necessary, under this formula, that, on failure of the personal motive, the business trip would have been taken *by this particular employee at this particular time.* It is enough that someone sometimes would have had to take the trip to carry out the business mission. (Vol. 1, Larson, op. cit., supra.)

Applying the foregoing rule to the instant case, Dehmer was not serving a purpose of his own which was inconsistent with his duties in traveling to Fostoria to inspect and finalize the Mennel contract. The fact that his wife as well as Ivers and his wife were present did not convert his prearranged business trip into a trip "purely for pleasure" as urged by the appellant.

There was ample evidence to sustain the district court's finding that Dehmer was on a business trip at the time his plane crashed. Likewise, there was substantial evidence to establish the necessity for Dehmer to travel to Fostoria to inspect the work and finalize the contract. It is clear that his trip was required to accomplish this task and that his personal objectives were so far subsidiary that the trip would not have been insisted upon for personal reasons had he elected not to make the trip for business purposes. Hence, it must be said that Dehmer's trip involved the performance of a service for McBride & Dehmer which was a concurrent cause of the trip. We conclude that Dehmer's work created the necessity for the trip to Ohio and that his death arose out of and in the course of his employment even though at the same time he served a purpose of his own when he visited friends in Columbus.

We think the appellant's contentions that Dehmer was not at a place where his employment took him when his plane crashed; that his death did not follow as a natural incident from his work, and that his business had been concluded prior to his accidental death, cannot be sustained.

In *Blair v. Shaw,* 171 Kan. 524, 233 P. 2d 731, three mechanics employed by a Chevrolet dealer in Fort Scott, Kansas, drove to Pittsburg, Kansas, to take what was known as "approved mechanics' examinations" given by the Chevrolet Division of General Motors. After the examinataions were concluded and while returning to Fort Scott, the mechanics were involved in a collision and all three

died as a result of their injuries. The compensation commissioner and the district court held the deaths to be compensable under the Workmen's Compensation Law. It was contended in this court that the deceased employees were not in the course of their employment in taking the examinations, and that if they were, they had completed them and were on their way home when they met their death. In affirming the award of compensation, this court said:

"Having concluded that the trip to Pittsburg to take the examination was a part of the employment, it seems entirely logical to conclude that the entire underaking is to be considered from a unitary standpoint rather than divisible. To take the examination it was necessary for decedents to make the round trip to Pittsburg. That involved travel by private autombile—going and returning—one project, so to speak, and included the normal traffic hazards inherent in such an undertaking. The act does not require that the injury be sustained on or about the employer's premises . . .

". . . we hold that under all of the facts and circumstances of the case, the lower court was correct in ruling that the trip to Pittsburg to take the examination was an integral part of the employment, and that at the time and place in question decedents had not left the duties of such employment . . ." (l. c. 529, 530.)

In the instant case, the return trip to Tulsa and Wichita was a necessary part of the business excursion. There is nothing in the record to indicate that Dehmer, who was in charge of the trip, intended that the journey home be otherwise than the final step of the business expedition. To inspect the work and finalize the contract, it was necessary for Dehmer to make a round trip to Fostoria. The mode of travel selected by him was in his private plane upon which the partnership of McBride & Dehmer had paid for the insurance, and had paid for gasoline and Dehmer's expenses on two previous trips to Fostoria. We know of no reason which would require the district court to conclude that the trip to Fostoria was divisible from the trip home. Inherent in its finding that Dehmer was on a business trip at the time his plane crashed was the finding that the trip to Fostoria was unitary in character and the return flight to Tulsa and Wichita was an integral part of the business trip.

We have examined, not overlooked, the authorities cited by the appellant and they do not control this case; hence, it is unnecessary to discuss them. Overall, this case presents a question of fact. We have repeatedly stated our rule in such a situation. The evidence and the inferences to be drawn therefrom amply sustain the findings of the district court.

The judgment is affirmed.