No. 52,258

FRED MITCHELSON, Executor of the Estate of Thad M. Sandstrom, Deceased; and MILDA J. SANDSTROM, *Appellants,* v. TRAVELERS INSURANCE COMPANY, *Appellee.*

(629 P.2d 143)

Opinion filed June 10, 1981.

*Michael W. Merriam,* of Colmery, McClure, Funk, Letourneau & Entz, of Topeka, argued the cause and was on the brief for the appellant.

*Philip H. Lewis,* of Eidson, Lewis, Porter & Haynes, of Topeka, argued the cause, and *Anne L. Baker,* of the same firm, was with him on the brief for the appellee.

The opinion of the court was delivered by

MILLER, J.: The plaintiff, Fred Mitchelson, executor of the estate of Thad M. Sandstrom, deceased, appeals from a summary judgment entered in his favor in this declaratory judgment action. The paramount issue is whether the estate is entitled to more prejudgment interest than that allowed by the trial court on the principal sum payable under the terms of an insurance policy.

Thad M. Sandstrom was the insured in an accident policy issued by defendant, Travelers Insurance Company, under which $100,000 was payable in the event of Sandstrom's accidental death. His wife, Milda J. Sandstrom, was the named beneficiary

of this policy. Sandstrom died of a gunshot wound on May 3, 1977. His death was accidental, within the terms of the policy coverage. Milda Sandstrom was charged and later convicted of murdering her husband. See *State v. Sandstrom,* 225 Kan. 717, 595 P.2d 324, *cert. denied* 444 U.S. 942 (1979). That action, or appeals therefrom, were pending throughout most of the time this civil action was before the trial court.

Within a few weeks after Sandstrom died, Milda Sandstrom assigned all of her rights as beneficiary under the policy to her then attorney, Robert D. Hecht, and Hecht gave notice of that assignment to Travelers and made demand for payment of the policy proceeds, together with interest from date of death. Hecht also noted in his letter that Mrs. Sandstrom stood charged with the murder of her husband, and that conviction of that offense would disqualify her from receiving the policy benefits by virtue of K.S.A. 59-513. Also, Mitchelson was appointed special administrator of the estate of Thad Sandstrom, deceased, and Mitchelson promptly notified Travelers of his appointment, and of Sandstrom's death, and he asked Travelers to hold the proceeds, with interest, until the criminal charges against Mrs. Sandstrom were resolved.

Counsel for Travelers responded on November 9, 1977, and by letters to the attorneys for the executor and to Mr. Hecht, suggested that a voluntary escrow agreement be entered into whereby Travelers could pay the entire proceeds due under the policy into escrow pending a final determination as to the proper payee. No escrow agreement was reached.

Fred Mitchelson, as executor, and Milda Sandstrom filed this action on November 14, 1978, seeking a determination as to ownership of the proceeds, and also seeking an order directing Travelers to pay the policy proceeds of $100,000 plus interest into court. Milda Sandstrom appeared by Russell Shultz, her new attorney. Travelers answered, alleging that there were conflicting claims to the policy proceeds by the estate, Milda Sandstrom and Robert D. Hecht. Travelers asked that Hecht be made a party, and stated that it was ready to pay the proceeds in the amount of $100,000, and it volunteered to pay that sum into the custody of the court pursuant to court order providing for the final determination of the conflicting claims to the policy proceeds. No order making Hecht a party or requiring payment by Travelers was

made. No further action was taken in the case until the following August.

Robert D. Hecht, on August 6, 1979, wrote to counsel for Travelers, stating that he had reassigned Mrs. Sandstrom's interest to her; a copy of the reassignment was received by counsel for Travelers later that month. Plaintiffs filed a motion for summary judgment on August 22; Travelers responded on October 12, opposing summary judgment for the reason that the record did not contain all necessary facts. The United States Supreme Court denied *certiorari* to Mrs. Sandstrom in *State v. Sandstrom* on November 5, 1979, and her conviction thus became final. The trial court entered summary judgment in this action on November 9, for plaintiffs and against Travelers for the sum of $100,000 plus interest at 6% per annum from August 6, 1979, the date of the letter from Hecht to Travelers' counsel. Twelve days later, Travelers paid the judgment. By motion to alter or amend, plaintiffs sought an award of interest from the time proof of loss was furnished until time of payment; Travelers responded, contending that it had used due diligence, and had offered to make payment of the principal much earlier. The motion was overruled, and the executor appeals. The trial court later determined that Milda Sandstrom had no interest in the proceeds, and directed that the money, which in the interim had been invested, be paid to the executor.

The executor contends that the trial court improperly granted summary judgment because the date Travelers first knew that Hecht had reassigned was a disputed issue of fact. The executor contends that his motion for summary judgment was on the sole issue of whether Travelers should pay interest; and that the issue of *when* the interest should begin was a separate issue which remains for trial. The motion for summary judgment, however, is not so limited; it states that the plaintiffs "move this Court for Summary Judgment in their favor against the Defendant Travelers Insurance Company." The trial court granted that motion, and fixed the date interest was to commence as August 6th, the date of Hecht's letter. That date was disclosed in the response of Travelers to plaintiffs' motion for summary judgment. There is nothing in the district court record to suggest that plaintiffs objected to that reference in the response, nothing to indicate that Travelers had any knowledge of Hecht's reassignment prior to that time,

nothing to indicate that Travelers was furnished with a copy of the reassignment or was told of its existence prior to August 6th.

Where the case records reflect a genuine issue of material fact, summary judgment is not warranted. *Farmers State Bank & Trust Co. of Hays v. City of Yates Center,* 229 Kan. 330, 624 P.2d 971 (1981). However, where the records reflect no genuine issue of material fact before the trial court, and summary judgment is entered, a party cannot raise a new issue for the first time in the appellate court. *Frank C. Bailey Enterprises, Inc. v. Cargill, Inc.,* 582 F.2d 333 (5th Cir. 1978); *Katsev v. Coleman,* 530 F.2d 176 (8th Cir. 1976); and see 10 Wright and Miller, Federal Practice and Procedure: Civil § 2716, n. 98 (1973). Here there was no factual issue before the trial court, and the trial court did not err on that ground in entering summary judgment.

The crucial issue here is not whether prejudgment interest should be allowed; the trial court determined that it should, and allowed prejudgment interest from August 6 to the date of judgment, November 9, 1979. Travelers, although contending that it should not be obligated to pay *any* prejudgment interest, paid the judgment, including the prejudgment interest allowed, and it does not appeal therefrom.

The issue presented in this appeal is *when* the prejudgment interest should commence to run. The executor contends that Travelers held a liquidated sum which it was obligated to pay under the terms of its policy, and thus it should be required to pay interest from the date of death, or from the date proof of loss was furnished; he contends that the trial court erred in not allowing more prejudgment interest. Travelers, on the other hand, contends that it acted in good faith; that it offered, at an early date, to pay the policy proceeds into escrow in order to avoid an action such as this, but the claimants would not and did not agree to such an arrangement; and that Travelers was not obligated to make payment until demand was made by a party or parties entitled to the proceeds, when it could make payment without the possibility of being subjected to double liability. Travelers reasons that demand was made by the filing of suit, but at that time Hecht was an assignee and potential claimant and he was not made a party, although Travelers so requested; that it was not until August 6 that Hecht's reassignment surfaced; and that until that date, Travelers could not safely make payment.

K.S.A. 16-201 (since amended) provides in applicable part that "[c]reditors shall be allowed to receive interest at the rate of six percent per annum . . . for any money after it becomes due . . . ." The appellant contends that the policy proceeds became due upon the accidental death of the insured, or at least at the time Travelers was notified of his accidental death, and appellant relies on an Indiana case to buttress his argument that interest was due under K.S.A. 16-201. In *United Farm Bureau Family Life Insurance Co. v. Fultz,* _____ Ind. App. _____, 375 N.E.2d 601 (1978), the insured was shot and killed in his home. His wife was charged and later acquitted of her husband's murder. In an action brought by the wife to recover the proceeds of an insurance policy on the husband's life, the court found that the amount of the proceeds became due and owing to the proper beneficiary when the husband died, even though the proper beneficiary could not be determined at that time. Under the Indiana statute making interest payable "[f]rom the date of settlement on money due on any instrument . . .", the court found that interest was due on the policy proceeds from the date of death.

The courts are not in agreement on the question of prejudgment interest in this situation. See 3 Appleman, Insurance Law & Practice § 1584, pp. 323-325. The question is usually resolved by examining the equitable and factual circumstances of each case. The general rules are discussed at length in *Powers v. Metropolitan Life Ins. Co.,* 439 F.2d 605, 608 (D.C. Cir. 1971), where the court says:

"Generally where, as here, there is a real dispute between claimants, and the insurance company is a mere stakeholder, interest is not allowed on the fund in question for the period during which it is on deposit in the registry of the court. 45 Am. Jr. 2d *Interpleader* § 40 (1969); Anno. 15 A.L.R.2d 473 (1951). *See also* Osborn v. Bank of United States, 22 U.S. (9 Wheat.) 738, 6 L.Ed. 204 (1824). And a stakeholder should be allowed without application of interest a reasonable time to determine whether there are adverse claims of substance and to prosecute any appropriate interpleader action in view of such determination. *See* Occidental Ins. Co. v. Row, 271 F. Supp. 920 (S.D.W.Va. 1967). Yet unreasonable delay or failure on the part of a stakeholder in depositing the funds in court may subject it to liability for interest on the funds. Anno. 15 A.L.R.2d 473, 477-479, *supra.*

"Whether any delay is reasonable or unreasonable of course depends upon the circumstances. Consideration in various cases has been given to time for investigation or negotiation between claimants; whether the delay was culpable to justify full legal interest or less culpable to warrant only interest actually earned by the fund; whether the interpleader action was vexatious; whether there had

been a claim for interest prior to deposit; whether delay is occasioned by negotiations; whether there has been any denial of liability; whether the stakeholder is disinterested as between the claimants; reasonable diligence and good faith; whether the policy provided for the payment of interest and whether there was a bona fide dispute among the claimants."

The court went on to hold that in such actions interest need not be automatically allowed, but its award should depend upon equitable considerations. In that action there was a substantial dispute between adverse claimants, and both the trial and the appellate court found that the insurer should not be required to pay interest.

In the case at hand, Travelers did not deny liability for the principal sum payable under the policy; it admitted liability, and attempted to negotiate an escrow agreement which would have avoided litigation, and would have placed the policy proceeds in the hands of an escrow party where it could have been invested for the benefit of the ultimate beneficiary. Such an attempt, we believe, was proper and appropriate, and such arrangements should be encouraged. Travelers initially offered to pay the proceeds into escrow, and after suit was filed, offered to pay the proceeds into court pursuant to court order. K.S.A. 60-222, our interpleader statute, provides for a court order "for the safekeeping, or for the payment or deposit in court, . . . of the subject of the action . . . ." Although Travelers' answer invited such an order, no order was sought or obtained.

The rule concerning liability for interest in similar situations is discussed in *Murphy v. Travelers Ins. Co.*, 534 F.2d 1155, 1165 (5th Cir. 1976), where it is said:

"In interpleader cases in Texas, the general rule concerning accrual of interest may be stated as follows:

" 'Once a stakeholder makes an unconditional offer to give up possession of a disputed fund, it ceases to exert that dominion over the money sufficient to justify an obligation to pay interest thereon, and the rule is that once such an unconditional tender is made, any liability for interest ceases as of the date of tender.'

"*Phillips Petroleum Co. v. Adams,* [513 F.2d 355, 370 (5th Cir. 1975)]. Payment of the proceeds into the registry of the court or an offer to do so is a sufficient 'unconditional tender' to terminate the claimant's right to interest following the tender. *Id.; Shell Oil Co. v. Jones,* 191 F. Supp. 585, 590 (S.D. Tex. 1960)."

Judge Barbara had the facts discussed above before him when he entered summary judgment. He notes in his letter to counsel that Travelers does not dispute liability; that it volunteered to pay

the principal sum; and that there was a genuine conflict as to the proper payee until that issue was resolved by Hecht's reassignment, notice of which was received by Travelers in August. He notes further that no court order for Travelers to pay in was ever requested or entered. Under all of the attendant circumstances, the judge determined that prejudgment interest should be allowed from August 6, 1979, the date of Hecht's letter.

We hold that the trial judge was correct in awarding prejudgment interest. *Shapiro v. Kansas Public Employees Retirement System,* 216 Kan. 353, 532 P.2d 1081 (1975); and see *Shutts, Executor v. Phillips Petroleum Co.,* 222 Kan. 527, 567 P.2d 1292 (1977), *cert. denied* 434 U.S. 1068, *reh. denied* 435 U.S. 961 (1978). The insurer is entitled to a reasonable time to investigate claims, to negotiate with the claimants, and to attempt out-of-court settlements. The attempt to secure an escrow agreement was entirely appropriate; that attempt, as well as the insurer's offers to make payment were apparently made in good faith, but were not acted on or accepted by the claimants. During all of the time up until August 6, so far as Travelers was aware, Hecht was asserting a conflicting claim to the proceeds, and he was not a party to the action. The judge did not order Travelers to make payment into court. Travelers was not obligated to make payment until it could do so without chancing duplicate liability. After it received word that Hecht had reassigned, the only claimants were the executor and Milda Sandstrom, both parties plaintiff in the action.

When prejudgment interest should commence is a matter to be determined by the trial court in the exercise of its sound discretion, upon consideration of all of the attendant facts and equities. Under all of the circumstances present here, we conclude that the trial court properly exercised its discretion in fixing the date from which prejudgment interest was to be paid. We find no abuse of that discretion and no error.

The judgment is affirmed.

SCHROEDER, C.J., dissenting: Travelers Insurance Company in my opinion was obligated to pay the $100,000 which became due under the terms of the policy upon proof of loss (proof of death in this case). Travelers does not challenge the fact that proof of loss was made within a reasonable time, shortly after the death of Thad Sandstrom on May 3, 1977. Travelers had the use of

$100,000, a liquidated sum, upon which it paid *no* interest until August 6, 1979. This was a period of 27 months during an economic period when interest rates were astronomical in comparison to past years.

Where the only issue confronting Travelers concerning the payment of its liquidated liability under the policy was a determination of the proper claimant, Travelers on its own initiative should have paid the funds into court and requested the court to make a determination of the proper claimant entitled to the funds. This procedure would relieve Travelers of any obligation to pay interest on the funds. If the contending claimants then quibbled over investment of the funds in the custody of the court, it would be at their expense.

During the 27-month period the prime rate of interest charged by banks advanced from 6.75% to 12.25%. Under the court's decision, assuming Travelers made an average of 10% per annum on investment of the funds, Travelers has benefited by more than $20,000 at the claimant's expense. This is not applying equity to the facts confronting the court.

On my theory of equity, insurance companies would not be permitted to maneuver, as Travelers did in this case, to avoid payment of their proven liability under an insurance policy.

It is respectfully submitted the trial judge should have determined when Travelers received proof of death in this case and awarded prejudgment interest from that date.

HOLMES and HERD, JJ., join the foregoing dissenting opinion.