No. 62,718

Ronnie G. Crawford, *Appellee*, v. Prudential Insurance Company of America, *Appellant*.

(783 P.2d 900)

Opinion filed December 8, 1989.

*John R. Cunningham*, of White, O'Connor & Werner, P.A., of Pittsburg, argued the cause and was on the brief for appellant.

*Timothy A. Short*, of Spigarelli, McLane & Short, of Pittsburg, argued the cause and was on the brief for appellee.

*Jack Peggs*, of Peggs & Pickler, of Wichita, and *Steven Hornbaker*, of Harper, Hornbaker & Altenhofen, Chartered, of Junction City, were on the brief for the *amicus curiae* Kansas Trial Lawyers Association.

The opinion of the court was delivered by

HOLMES, J.: This is an appeal by the defendant, Prudential Insurance Company of America (Prudential), from a district court

judgment that an exclusionary clause in a group insurance policy did not apply to the injuries suffered by the plaintiff, Ronnie G. Crawford. The Court of Appeals found the exclusionary clause did apply and reversed the district court. *Crawford v. Prudential Ins. Co.*, 13 Kan. App. 2d 452, 773 P.2d 678 (1989). We granted review.

Plaintiff Crawford suffered injuries on September 28, 1983, when he fell through the roof on property occupied by Pittsburg Aluminum Recycling, Inc. (Pittsburg). Crawford was assisting A. I. Leonard in repairing the roof for Pittsburg. Pittsburg had contracted with Leonard, an independent contractor, to repair the roof. Crawford agreed to help Leonard and was to be paid by the hour. Pittsburg had no contract or dealings with Crawford. The relationship between Leonard and Crawford is disputed.

Crawford contended that Leonard called him and asked if Crawford wanted to work on the re-roofing and told Crawford he would get $8.00 an hour, although Leonard did not mention who would pay Crawford. At the job site, Leonard instructed him on job duties, and Crawford "assumed" Leonard could fire him. Leonard did not inform Crawford of the details of his contract with Pittsburg.

Leonard contended that Crawford had visited him twice, inquiring whether Leonard knew of any jobs on both occasions. On the second occasion, Leonard informed Crawford of his agreement with Pittsburg to repair the plant roof, told Crawford that he charged Pittsburg $8.00 per hour and that Crawford could get the same amount, and expressed his inclination to reject the job. Crawford responded that he needed the money and stated, "[L]et's go do it." They used Leonard's tools and Leonard drove them to the plant because the tools were in his truck. Both Crawford and Leonard made suggestions concerning working hours and breaks. Leonard did not think he could fire Crawford.

It is undisputed that Leonard submitted a bill to Pittsburg for the entire amount, including Crawford's wages, and Pittsburg gave Leonard a check in that amount. Leonard gave Crawford's wages to Crawford's wife in cash. Neither Pittsburg nor Leonard withheld money for taxes. Other than as employees for the same employer several years before, Crawford and Leonard had not worked together previously. Leonard had no workmen's com-

pensation insurance. Crawford suffered injuries in his fall from the roof of Pittsburg's building and incurred medical bills in the amount of $8,366.80.

Crawford's wife was employed by Ace Electric of Columbus, Kansas. Prudential had issued a group health and accident insurance policy to Ace Electric, and it is undisputed that Crawford, as a member of his wife's family, was an insured under the terms of the policy.

Crawford filed a workmen's compensation claim against Pittsburg and Leonard which, at the time of oral argument before this court, was still pending. Notwithstanding the pending workmen's compensation claim, Crawford filed an action on July 27, 1984, against Prudential seeking to recover his medical expenses. Prudential denied payment, relying upon an exclusionary clause in its policy with Ace Electric which reads:

"Generally Excluded Charges:
(1) Occupational Injury or Disease charges — charges incurred in connection with (a) injury arising out of, or in the course of, any employment for wage or profit or (b) disease covered, with respect to such employment, by any workers' compensation law, occupational disease law or similar legislation."

The district court determined that the exclusion did not apply to Crawford's injuries and granted judgment for $8,366.80, together with prejudgment interest from August 26, 1987, costs, and attorney fees in the amount of $2,788.93. On appeal, the Court of Appeals held the exclusionary clause applied and reversed the judgment of the district court.

The issues as framed by the appellant are:
1. Whether the district court erred in finding coverage by interpreting the policy exclusion as applying only to injuries covered by workers' compensation.
2. Whether the district court erred in granting attorney fees and prejudgment interest considering plaintiff caused any delay and a bona fide dispute on coverage existed.

The parties stipulated as to the evidence in the district court, which consisted primarily of transcripts and depositions from the workmen's compensation case. After the filing of briefs, the district court issued its opinion, which included findings of fact and conclusions of law as follows:

"WHEREUPON, after hearing the evidence and being duly advised by counsel, the Court finds as follows:

"1. That Plaintiff was injured on September 28, 1983, while working on the roof at Pittsburg Aluminum Recycling and incurred $8,366.80 in medical expenses as a result of such injury.

"2. That Plaintiff filed a timely claim for coverage of said medical expenses under Policy No. 45700-010, but Defendant denied such claim on December 27, 1983, relying upon the following policy exclusion:

"(1) Occupational Injury or Disease Charges—charges incurred in connection with (a) injury arising out of, or in the course of, any employment for wage or profit or (b) disease covered, with respect to such employment, by any workmen's compensation law or similar legislation."

"3. That Plaintiff was not an employee of Pittsburg Aluminum Recycling.

"4. That Plaintiff was not an employee of his co-worker A. I. Leonard, with whom Plaintiff was engaged in a joint venture at the time of his injury.

"5. That even if Plaintiff were an employee of said A. I. Leonard, his injury would not be compensable because said A. I. Leonard's payroll was below the statutory minimum under the Kansas Workers' Compensation Act, K.S.A. 44-501 *et seq.*

"6. That Plaintiff's injury did not 'arise out of and in the course of employment' and is not compensable under the Kansas Workers' Compensation Act.

"7. That the exclusion relied upon by Defendant has been previously construed by the Kansas Supreme Court in *Beinz, Administratrix v. John Hancock Mut. Life Ins. Co.*, 195 Kan. 422 (1965).

"8. That said exclusion does not apply *unless* (a) workers' compensation benefits have been recovered *or* (b) the injured party has a legal right to recover workers' compensation benefits, regardless of whether or not a claim is made for workers' compensation benefits. See *Beinz*, supra, at 426.

"9. That the purpose of said exclusion is to prevent a double recovery by the insured.

"10. That the exclusion relied upon by Defendant does not apply since Plaintiff did not recover workers' compensation benefits and does not have a legal right to recover such benefits.

"11. That the rule limiting application of said exclusion is well established under Kansas Law. See *Beinz* supra; *St. Francis Hosp. & School of Nursing, Inc. v. Eckman & United Benefit Life Co.*, 212 Kan. 131 (1973); and *Knoble v. National Carriers, Inc.*, 212 Kan. 331 (1973).

"12. That where policy provisions have been previously construed by the Court, an insurer has a duty to act in accordance with such existing case law. *Spruill Motors, Inc. v. Universal Underwriters Ins. Co.*, 212 Kan. 681, 689 (1973).

"13. That in light of the decisions of the Kansas Supreme Court in *Beinz, St. Francis,* and *Knoble,* supra, Defendant had no 'just cause or excuse' for denying Plaintiff's claim, and therefore Plaintiff should be awarded attorney fees pursuant to K.S.A. 40-256.

"14. That Plaintiff's agreement with his attorneys for a one-third contingent fee is fair and reasonable. See *Grayson v. Grayson*, 184 Kan. 116 (1959); *Russell v. Mackey*, 225 Kan. 588 (1979); *Ballweg v. Farmers Ins. Co.*, 228 Kan. 506 (1980).

"NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED BY THE COURT that Plaintiff be and hereby is granted judgment against Defendant under said insurance policy in the sum of $8,366.80 together with interest thereon from August 26, 1987, at ten per cent (10%) per annum until judgment, pursuant to K.S.A. 16-201, and at the judgment rate thereafter, commencing Feb. 12, 1988, in accordance with K.S.A. 1987 Supp. 16-204(e), and for costs in the sum of $55.00.

"IT IS FURTHER ORDERED, ADJUDGED AND DECREED BY THE COURT that Plaintiff be and hereby is awarded attorney fees in the sum of $2,788.93, pursuant to K.S.A. 40-256.

"IT IS SO ORDERED THIS 30th day of June, 1988."

Prudential has not appealed from the trial court's findings that Crawford was not an employee of either Pittsburg or Leonard; that even if Crawford was an employee of Leonard, his injuries would not be compensable under the workmen's compensation laws; and that Crawford's injuries did not "arise out of and in the course of employment" under the workmen's compensation laws. As these findings have not been appealed, we must accept them as true even though the question of coverage in the workmen's compensation case has never been finally determined in that action. See *Palmer v. State*, 10 Kan. App. 2d 656, Syl. ¶ 1, 707 P.2d 1091, *rev. denied* 238 Kan. 878 (1985).

The first issue is whether the district court erred in finding that the policy exclusion only applies to injuries covered by workmen's compensation. It appears that the trial court considered the exclusionary clause, previously set forth, in its entirety and concluded that the modifying clause "covered, with respect to such employment, by any workers' compensation law" applied to injury arising under both subparts (a) and (b) of the exclusionary clause. In doing so, the trial court concluded that, unless Crawford's injuries were covered by workmen's compensation the exclusion did not apply. The Court of Appeals, on the other hand, limited its consideration to subpart (a). It found that Crawford fell through the Pittsburg roof while working for wages and suffered injuries which arose out of employment. The court then stated:

"Based on the clear language of the insurance policy [subpart (a) only], Crawford's injury falls under the exception and Prudential should not be required to pay the claim unless the exclusion becomes inoperable for some other reason." 13 Kan. App. 2d at 456.

The Court of Appeals found nothing which would make subpart (a) of the exclusionary clause inoperable and determined that the Prudential policy did not cover the injuries suffered by Crawford.

It appears to us that the controlling question before this court is whether the exclusionary clause is ambiguous. In construing the language of an insurance policy, certain general rules and principles apply.

"The language of a policy of insurance, like any other contract, must, if possible, be construed in such manner as to give effect to the intention of the parties. The test to be applied in determining this intention is not what the insurer intended the policy to mean, but what a reasonable person in the position of the insured would understand it to mean. When the contract is clear and unambiguous, the words are to be taken and understood in their plain, ordinary, and popular sense, and there is no need for judicial interpretation or the application of rules of liberal construction; the court's function is to enforce the contract according to its terms. Since an insurer prepares its own contracts, it has a duty to make the meaning clear, and if it fails to do so, the insurer, and not the insured, must suffer. Thus, if the terms of a policy are ambiguous or uncertain, conflicting, or susceptible to more than one construction, the construction most favorable to the insured must prevail." *Fowler v. United Equitable Ins. Co.*, 200 Kan. 632, 633-34, 438 P.2d 46 (1968).

"Where an insurer intends to limit or restrict the coverage under its policy, it should use language which clearly reveals its stated purpose." *Central Security Mut. Ins. Co. v. De Pinto*, 235 Kan. 331, 334, 681 P.2d 15 (1984).

Prudential contends that subparts (a) and (b) of the exclusionary clause should be read and considered as separate exclusions and subpart (a) should be literally applied according to its terms, resulting in no coverage for Crawford. On the other hand, Crawford contends that the exclusionary clause should be read and considered in its entirety, that the modifying clause at the end applies to subpart (a) as well as (b), and that a clear reading of the entire clause will show that it does not apply in this case. There are numerous cases which support both interpretations of identical or similar language.

Crawford and the trial court relied upon our decisions in *St. Francis Hospital & School of Nursing, Inc. v. Eckman*, 212 Kan. 131, 510 P.2d 175 (1973), and *Bienz, Administratrix v. John Hancock Mutual Life Ins. Co.*, 195 Kan. 422, 407 P.2d 222 (1965). On appeal, Crawford continues to rely primarily on the same two cases.

The Court of Appeals explained and discussed *Bienz* as follows:

"In *Bienz*, the insured was killed when his private plane crashed while returning from a business trip. The insured's estate sought to recover death benefits. The insurance company claimed that payment of benefits was excluded because the policy provided that no payment should be made 'for any loss of life caused by "injuries arising out of and in the course of employment for wage or profit.'" 195 Kan. at 423. The trial court granted judgment to the insurance company, and the Supreme Court affirmed. 195 Kan. at 423, 429.

"In deciding the case, the court stated that the words " 'injuries arising out of and in the course of employment for wage or profit" . . . have, by judicial construction, acquired a definite meaning which is generally recognized, and when used in an exception clause in a group insurance policy, were intended to have the same meaning they have in the Workmen's Compensation Act.' 195 Kan. 422, Syl. ¶ 1. The court further stated: 'We are of the opinion that the phrase as used in the exclusion clause of the defendant's policy was intended to exclude from the benefits of the policy persons whose claims *might* be based on injuries compensable under the Workmen's Compensation Act.' (Emphasis added.) 195 Kan. at 426.

"In this case, the trial court extended *Bienz* by holding that the exclusion does not apply unless workers' compensation benefits have been recovered or the injured party has a legal right to recover workers' compensation benefits. The trial court in effect held that the injury may *arise out of, or in the course of, employment for wage or profit,* but if workers' compensation is not available for some other reason, the exclusion is not applicable. We disagree, and read *Bienz* to say only that workers' compensation law should be used to determine whether an injury *arises out of and in the course of employment* so as to trigger the exception." 13 Kan. App. 2d at 454-55.

We agree that the trial court expanded our holding in *Bienz*.

In *St. Francis Hospital*, 212 Kan. 131, John Eckman, while working on a job for his employer, fell off a roof and was severely injured. Eckman was hospitalized at St. Francis Hospital and incurred medical expenses in the amount of $10,502.90. Eckman's employer, Harper Trucks, Inc., had workmen's compensation coverage with Globe Insurance Company, which evidently paid $4,492.74 to the hospital. The hospital sued Eckman and re-

covered a judgment for the difference of $6,010.16. Harper Trucks, Inc., in addition to its workmen's compensation coverage, had a group health and accident policy issued by United Benefit Life Insurance Company. After it had obtained judgment against Eckman, the hospital filed a garnishment action against United Benefit, which "answered that it was neither indebted to Eckman nor did it possess any of his property." 212 Kan. at 132. United Benefit relied upon an exclusionary clause in its policy which read:

"This policy does not cover (a) injuries arising out of or in the course of the employment of the protected person or his dependents or sickness covered by a Workmen's Compensation Act or similar legislation . . . ." 212 Kan. at 132.

In considering the exclusionary clause, this court stated:

"In a letter opinion and in the journal entry the district court found that the exclusionary clause clearly and with no ambiguity relieved United, the garnishee, of any liability or obligation to pay hospital benefits. With this determination we are disposed to agree.

"However, it is contended by the hospital that the exclusionary clause is ambiguous and that under our rule with respect to adhesion contracts including, in particular, contracts of insurance, the clause must be construed strictly against the insurance company which prepared the contract, and in favor of the policyholder. (3 Hatcher's Kansas Digest [Rev. Ed.] Insurance, § 42.) This is, indeed, the rule which has been expressed by this court many times, and we are not prepared to deviate therefrom in the least. But before the rule may be applied in a given case there must be vagueness or uncertainty of meaning in the contract being considered.

"Two ambiguities are said to arise from the language of the exclusionary clause according to the view expressed by the hospital. It contends the clause is subject to criticism on two counts, the first of which is: Does the phrase 'covered by a Workmen's Compensation Act' modify sickness alone or does it modify injuries as well? If the phrase qualifies only sickness, and this is the position assumed by United, then every injury arising out of or in the course of a workman's employment is excluded from coverage under the policy, whether or not the injury be one which is covered by workmen's compensation. We are inclined to disagree with United's posture in this regard." 212 Kan. at 132-33.

The court determined that the provision concerning workmen's compensation in the exclusionary clause applied to both injury and disease and that as Eckman was covered, at least in part, by workmen's compensation, the exclusionary clause precluded any liability under the United Benefit policy. The second am-

biguity asserted by the hospital pertained to whether the policy covered amounts in excess of the workmen's compensation coverage and is not directly germane to the issues now before us. In the present case, the Court of Appeals did not mention *St. Francis Hospital* in its opinion.

Crawford contends that, as the Prudential exclusionary clause is similar if not identical to the one in *St. Francis Hospital*, that case requires that the workmen's compensation provision in the Prudential clause also be found to apply to injury as well as disease. It is asserted that, as the trial court found there was no workmen's compensation coverage and that Crawford had no right to recover such compensation, the exclusionary clause, when read in its entirety, does not apply to the injuries Crawford suffered.

Prudential, on the other hand, asserts that its clause is considerably different from the one considered in *St. Francis Hospital* and points out that it must be read to provide two separate exclusions, one under subpart (a), which excludes charges incurred in connection with "injury arising out of, or in the course of, any employment for wage or profit," and another under subpart (b) pertaining to disease covered by workmen's compensation, which does not apply to this case. The Court of Appeals apparently agreed with this argument and held that subpart (a), when read alone, clearly applied as Crawford obviously was employed by someone and "it is evident that Crawford fell through the roof while working for wages." 13 Kan. App. 2d at 456. The court also found that it was clear the injury arose out of employment, regardless of who the employer might be. The Court of Appeals did not even mention subpart (b). Prudential also argues that, even if the exclusionary clause is considered in its entirety, the modifying clause which refers to workmen's compensation only applies to subpart (b), and the exclusion still applies. If it were clear that subpart (a) must be read separately and without any consideration of subpart (b) and the final modifying clause, we would be inclined to agree with the Court of Appeals. However, we do not find that to be the case.

The same or similar language has been interpreted differently by various courts. Many of the cases turn upon whether the injured person was employed and whether the injury was one arising out of, and in the course of, employment, which are

requirements generally applicable to workmen's compensation claims. K.S.A. 1988 Supp. 44-501(a). While it is obvious in the present case that Crawford was injured while working for wages, the district court has also found that he was not employed and was not eligible to recover workmen's compensation benefits.

Some courts, including the Court of Appeals in this case, have held that subpart (a) is complete by itself, clear and unambiguous, and not subject to construction. The courts so holding point out that the subparts are separated by the disjunctive *or* and clearly must be read and applied separately. Although not cited by Prudential, there are at least four cases which have construed the identical language now before us favorably to Prudential. *Brezan v. Prudential Ins. Co. of America*, 507 F. Supp. 962 (E.D. Pa. 1981); *Prudential Ins. Co. of America v. Bellar*, 391 So. 2d 737 (Fla. Dist. App. 1980); *Wilson v. Prudential Ins. Co. of America*, 645 P.2d 521 (Okla. 1982); *Wilson v. Prudential Insurance Company of America*, 528 P.2d 1135 (Okla. App. 1974). On the other hand, in *Montoya v. Travelers Ins. Co.*, 91 N.M. 667, 579 P.2d 793 (1978), a clause virtually indistinguishable from the Prudential clause was considered in its entirety and the modifying phrase of subpart (b) was also applied to subpart (a). The rationale of the conflicting views will be set forth briefly.

In *Brezan*, the court, faced with the same exclusionary clause now before us, stated:

"Plaintiff urges the Court to apply the italicized phraseology [covered . . . by any workmen's compensation law] concerning the workmen's compensation to not only the word 'disease' in subsection 'b' but also to the word 'injury' in subsection 'a'. Accordingly, plaintiff reasons, the proposed intercalary language of the policy would exclude only occupational injuries covered by workmen's compensation laws and, therefore, the insurance policy would not exclude costs which plaintiff incurred in the course of his employment and as a result of a motorcycle accident." 507 F. Supp. at 963-64.

After reviewing rules relating to the interpretation of insurance policies, the court went on to state:

"Courts enforce but do not rewrite agreements into which parties enter. [Citations omitted.] Plaintiff's theory overlooks both these principles and the fact that the two subsections are worded disjunctively. Clearly, the drafters intended to define 'occupational injuries' and 'occupational diseases' differently. Otherwise, the word 'and' would have been used; or the definition

of 'occupational injury or disease charges' would have been placed together in one definition. The purpose of separate treatment for the two terms can be discerned, and careful examination of the policy exclusions for occupational diseases and injuries unquestionably reveals the intent of the drafters, who in the first subparagraph desired to exclude occupational *injury*, which can usually be determined as job-related with little difficulty. Hence, the definition is broadly defined. Whether the etiology of a claimant's *disease* involves employment conditions usually poses a more perplexing problem. [Citation omitted.] Identification of the nexus between the employment and the disease may be elusive. To avoid disputes with claimants as to whether a person's employment caused a disease, the drafters of this contract used more narrowly tailored language to define the term 'occupational disease'. Unmistakably, the syntax of this exclusionary clause requires no judicial alteration to comprehend its meaning. Interpolation of the workmen's compensation language into the 'occupational injury' portion of the clause would create an ambiguity where none presently exists. Plaintiff's injury occurred during the course of his employment; the exclusionary clause expressly disallows any compensation therefor." 507 F. Supp. at 964-65.

In *Montoya*, the court explained an opposite conclusion. Albert Montoya, Sr., brought the action to recover for injuries suffered by his son Albert Montoya, Jr., who was injured while working in a gas station for wages, on a part-time basis. Evidently he was not covered by workmen's compensation. The plaintiff and his family were insureds under a group policy issued to plaintiff's employer. The policy included an exclusionary clause similar to the Prudential clause. After setting forth the exclusionary clause, the court stated:

"The trial court found that this exclusionary clause did not apply to the facts in this case. The court's conclusions of law reveal two bases for this determination. In its Conclusion No. 4, the court expresses the view that the exclusionary clause, by its terms, excludes only charges incurred in connection with an injury sustained while doing any act or thing pertaining to any occupation or employment for remuneration, or disease for which benefits are payable in accordance with the provisions of any workmen's compensation or similar law. In its Conclusions Nos. 5 and 6, the court expressed the alternative view that the clause is ambiguous and should therefore, under a well established principle of New Mexico law, be construed liberally in favor of the insured. Conclusion 5 suggests that the clause is ambiguous because it is unclear whether the workmen's compensation proviso applies to both subclauses (a) and (b) or only to subclause (b), and should therefore be interpreted liberally to apply to both (a) and (b) since its purpose is to prevent double recovery by the insured, and not to deprive the insured from recovering under the policy when the charges for medical expenses are not covered by workmen's compensation." 91 N.M. at 668.

The court then pointed to cases which have found similar language to exclude coverage whenever the insured suffered injury while working for profit or remuneration. The court then stated:

"The insurer, following this reasoning, argues that recovery should be denied whenever an insured sustains an injury while working for remuneration whether or not the employee or dependent is covered by workmen's compensation and that the coverage by workmen's compensation is relevant only when a claim is based on disease.

"Conversely, in *Rankin v. New York Life Insurance Company*, 240 So. 2d 758 (La. App. 1970), it was held that a similar exclusionary clause in a hospitalization policy precluded an employee from recovery only if the employee was covered by workmen's compensation or similar legislation since it was that court's view that the purpose of such an exclusion is to prevent double recovery. [Citation omitted.]

"Since there are two inconsistent interpretations possible, we hold that the exclusionary clause at issue is ambiguous. We have previously stated that when an ambiguity exists in an insurance policy we will liberally construe such ambiguity in favor of the insured. [Citation omitted.] Furthermore, we believe, as did the *Rankin* court, that the purpose of the clause is to prevent double recovery." 91 N.M. at 668.

See *General American Life Ins. Co. v. Fisher*, 517 So. 2d 31 (Fla. Dist. App. 1987); *United Benefit Life Ins. Co. v. Glisson*, 105 Ga. App. 122, 123 S.E.2d 350 (1961).

It may also be argued, as the Court of Appeals apparently found here, that the language of subpart (a) varies from the required language for workmen's compensation and therefore (a) is not limited by the reference to workmen's compensation in subpart (b). Just as logically it may be argued that the language in the modifying clause in (b) which reads "with respect to such employment" obviously refers to the employment described in (a) and therefore the modifying clause must also be applied to (a). Other interpretations of the exclusionary language are also possible, but need not be explored further. For additional cases and discussion on the same general subject, see Annot., 47 A.L.R.2d 1240; Annot., 40 A.L.R.3d 1012.

Suffice it to say the reported cases are in conflict, the trial judge and the Court of Appeals reached different conclusions and the justices of this court do not agree on the proper interpretation and application of the clause in question. Under such circumstances, the clause is, by definition, ambiguous and must be

interpreted in favor of the insured. *Fowler v. United Equitable Ins. Co.*, 200 Kan. at 634. We conclude the trial court was correct in finding the exclusionary clause did not apply in this case even though it did so for the wrong reason, and we affirm the trial court on this issue. *Prairie State Bank v. Hoefgen*, 245 Kan. 236, Syl. ¶ 3, 777 P.2d 811 (1989).

The next issue asserted by Prudential is that the trial court erred in granting attorney fees to Crawford. K.S.A. 40-256 provides in part:

"**Attorney fees in actions on insurance policies; exception.** That in all actions hereafter commenced, in which judgment is rendered against any insurance company as defined in K.S.A. 40-201 . . . if it appear from the evidence that such company, society or exchange has refused without just cause or excuse to pay the full amount of such loss, the court in rendering such judgment shall allow the plaintiff a reasonable sum as an attorney's fee for services in such action, including proceeding upon appeal, to be recovered and collected as a part of the costs . . . ."

The rules to be applied in determining whether an award of attorney fees under K.S.A. 40-256 is appropriate were outlined in *Clark Equip. Co. v. Hartford Accident & Indemnity Co.*, 227 Kan. 489, 608 P.2d 903 (1980):

"Whether attorney fees are awardable under K.S.A. 40-256 depends on the facts and circumstances of the particular case. *Forrester v. State Farm Mutual Automobile Ins. Co.*, 213 Kan. 442, 517 P.2d 173 (1973); *Sturdy v. Allied Mutual Ins. Co.*, 203 Kan. 783, 457 P.2d 34 (1969). What constitutes refusal to pay 'without just cause or excuse' varies with each case. *Koch, Administratrix v. Prudential Ins. Co.*, 205 Kan. at 565, held the above phrase to mean 'frivolous and unfounded,' and that denial of liability must be patently without any reasonable foundation. Attorney fees must be denied when there existed a good faith legal controversy as to liability. *Forrester*, at 452. If there is a bona fide and reasonable factual ground for refusing to pay a claim, attorney fees are not awardable. *Koch*, at 565. Denial of payment where not arbitrary, capricious, or in bad faith will not give rise to an award of attorney fees. *Van Hoozer v. Farmers Insurance Exchange*, 219 Kan. 595, 615, 549 P.2d 1354 (1976)." 227 Kan. at 493-94.

In the present case we have already determined that the exclusionary clause is ambiguous, requiring a construction of the policy favorable to Crawford. However, this does not necessarily mean that Prudential "refused without just cause or excuse" to pay the claim. The trial court relied upon *Bienz* and *St. Francis Hospital* for its determination that Prudential was liable for at-

torney fees. As previously discussed, those two cases do not clearly establish liability on Prudential's part.

Here, although we have found the exclusionary clause to be ambiguous, we recognize that a majority of the jurisdictions which have construed the same or similar language have done so in favor of the insurance company and have held the insured could not recover. Under these circumstances a bona fide controversy existed, and the trial court erred in awarding attorney fees pursuant to K.S.A. 40-256. We reverse the trial court on this issue.

The final issue raised by Prudential is the allowance of prejudgment interest for the period from August 26, 1987, until the date of judgment. K.S.A. 16-201 provides:

"Creditors shall be allowed to receive interest at the rate of ten percent per annum, when no other rate of interest is agreed upon, for any money after it becomes due; for money lent or money due on settlement of account, from the day of liquidating the account and ascertaining the balance; . . . for money due and withheld by an unreasonable and vexatious delay of payment or settlement of accounts."

In the present case there was never any serious dispute as to the amount in controversy, which was $8,366.80. The fact that a good faith controversy existed as to coverage which precludes the allowance of attorney fees does not necessarily preclude the granting of prejudgment interest in a case of this type.

In *Friedman v. Alliance Ins. Co.*, 240 Kan. 229, 729 P.2d 1160 (1986), this court upheld an award of prejudgment interest on an undisputed portion of an insured's claim, despite the denial of attorney fees because of a good faith question of coverage. 240 Kan. at 239. The same result was reached in *Harper v. Prudential Ins. Co. of America*, 233 Kan. 358, 662 P.2d 1264 (1983). The court rejected an award of attorney fees because of a bona fide question concerning the insurer's failure to pay the claim. Nevertheless, the court found the amount of insured's claim was liquidated and found no error in the trial court's award of interest. 233 Kan. at 372-73.

In *Leeper v. Schroer, Rice, Bryan & Lykins, P.A.*, 241 Kan. 241, 736 P.2d 882 (1987), this court recognized that under the facts of the case the allowance or disallowance of prejudgment interest was a matter of judicial discretion subject to being overruled only when there is an abuse of discretion.

"One who asserts the court has abused its discretion bears the burden of showing such abuse of discretion. [Citations omitted.] Judicial discretion is abused when judicial action is arbitrary, fanciful or unreasonable, which is another way of saying that discretion is abused only where no reasonable man would take the view adopted by the trial court. If reasonable men could differ as to the propriety of the action taken by the trial court then it cannot be said that the trial court abused its discretion." 241 Kan. at 248.

This same discretion and standard has been recognized on the similar issue of when prejudgment interest should begin. See *Mitchelson v. Travelers Ins. Co.*, 229 Kan. 567, 629 P.2d 143 (1981). Here the trial court determined that interest should be allowed beginning as of the date of the pretrial conference. Under all of the circumstances of this case, we cannot say that the trial court abused its discretion in awarding prejudgment interest.

The judgment of the Court of Appeals is affirmed in part and reversed in part. The judgment of the district court is affirmed in part and reversed in part.

SIX, J., not participating.

MILLER, C.J., dissenting: I respectfully dissent from that portion of the opinion holding that the exclusionary clause of the policy is ambiguous. As the majority opinion points out, the majority of jurisdictions which have considered the clause have held it unambiguous. A unanimous opinion by three distinguished judges of our Court of Appeals so held. That the plaintiff has suffered grievous injuries is undisputed, and one cannot but sympathize with his plight. Those facts, however, do not justify a tortured reading of the clear language of the policy in order to impose liability on the health insurer which specifically excluded coverage for employment-connected injuries such as plaintiff sustained. I would affirm the Court of Appeals on the first issue.

MCFARLAND, J., joins the foregoing dissenting opinion.