**FIDELITY & DEPOSIT COMPANY OF MARYLAND, Plaintiff,**

v.

**HARTFORD CASUALTY INSURANCE COMPANY, Defendant.**

**Case No. 01–2015–JWL.**

United States District Court, D. Kansas.

Aug. 23, 2002.

J. Nick Badgerow, Spencer, Fane, Britt & Browne, Overland Park, KS, for plaintiff.

Lee M. Baty, Theresa A. Otto, Randall W. Brown, Baty, Holm & Numrich, P.C., Kansas City, MO, for defendant.

## MEMORANDUM AND ORDER

LUNGSTRUM, District Judge.

This duty to defend and indemnify action arises out of an insurance coverage dispute over faulty workmanship on a project to construct a performing arts center and middle school (the "project") in La-Cyne, Kansas. After a bench trial, the court issued its findings of fact and conclusions of law on June 26, 2002. In that Memorandum and Order, the court awarded plaintiff Fidelity & Deposit Company of Maryland ("F & D") $1,000,000 for damages incurred as a result of property dam-ages to the project and $680,818.13 for attorneys' fees and expenses National Contractors, Inc. ("National") incurred in the underlying lawsuit against it. With regard to prejudgment interest pursuant to K.S.A. § 16–201, the court concluded it should not be awarded on the $1,000,000 award for damages caused by property damage to the project but determined that it was appropriate with regard to the $680,818.13 award for National's attorneys' fees in the underlying litigation. In connection with that award, the court permitted F & D to file a Rule 59(e) motion to alter or amend the judgment to include an award for pre-judgment interest. Finally, the court con-cluded that F & D should not be entitled to an award for attorneys' fees pursuant to K.S.A. § 40–256 for prosecuting this ac-tion.

The matter is now before the court on F & D's motion to alter or amend the judg-ment (Doc. 72) pursuant to Federal Rule of Procedure 59(e). Specifically, F & D urges the court to: (1) award it prejudg-ment interest on the attorneys' fees Na-tional incurred in the underlying litigation, calculated from the point in time that Na-tional received invoices from its attorney, Mr. Quatman; (2) reconsider the portion of the court's June 26, 2002, Memorandum and Order, in which the court concluded that prejudgment interest was not appro-priate on the award of $1,000,000 for the damage caused by property damage to the project; (3) reconsider the portion of the court's June 26, 2002, Memorandum and Order, in which the court held that F & D is not entitled to an award for the defense costs it incurred in the underlying litiga-tion; and (4) reconsider the portion of the court's June 26, 2002, Memorandum and Order, in which the court held that F & D is not entitled to attorneys' fees pursuant to K.S.A. § 40–256 for prosecuting the cur-

rent action.[1] For the reasons set forth in detail below, F & D's motion is denied except as to its motion for prejudgment interest on the $680,818.13 award for National's attorneys' fees in the underlying litigation. As to that issue, the court concludes that F & D is entitled to prejudgment interest in the amount of $116,287.52.

● Prejudgment Interest on the $680,818.13 Award for National's Attorneys' Fees in the Underlying Litigation

In the June 26, 2002, Memorandum and Order, the court explained that F & D's award of $680,818.13 was liquidated as the amount had never been in dispute. Nonetheless, because it was not clear from the record the date from which the prejudgment interest should begin to accrue, the court permitted F & D to file a motion to amend the court's judgment pursuant to Rule 59(e). In F & D's Rule 59(e) motion, it argues that the prejudgment interest should be calculated from the date that National received invoices from its attorney, Mr. Quatman, because according to his affidavit attached to F & D's motion each of his invoices was due upon receipt. In its response, Hartford Casualty Insurance Company ("Hartford") argues that prejudgment interest should not accrue until the date the parties exchanged trial exhibits because that is the date F & D provided Hartford with the breakdown of its damages claims based on fees incurred by National.[2]

 "When prejudgment interest should commence is a matter to be determined by the trial court in the exercise of its sound discretion, upon consideration of all the attendant facts and equities." *Mitchelson v. Travelers Ins. Co.*, 229 Kan. 567, 629 P.2d 143, 148 (1981); *Hatch & Kirk Power Servs. Corp. v. City of Girard*, 1999 WL 99307, at *4 (D.Kan. Jan. 19, 1999) (unpublished opinion). The evidence at trial established that National sent written notice of the School District's claim to Hartford requesting that Hartford defend and indemnify National in the lawsuit. Hartford refused. Thus, the court concludes that the attorneys' fees that Hartford must now pay were liquidated at the point in time National paid Mr. Quatman's invoices. At that point in time, the amount of the attorneys' fees and the date on which the fees were due was fixed and certain.[3] Moreover, because National had notified Hartford of the School District's

1. F & D points out that its motion for attorneys' fees is also brought pursuant to Fed. R.Civ.P. 54(d)(2) "to ensure that its claim therefor is preserved and not waived, as Rule 54(d)(2) appears to require that this claim be made by post-trial motion." To the extent that Rule 54(d)(2) requires such a motion, the court acknowledges that F & D has preserved its claim.

2. Hartford makes an independent argument that prejudgment interest should not be awarded because the attorneys' fees were not fixed and certain. Hartford argues that the attorneys' fees were not fixed and certain because National's demand letter to Hartford did not break out the attorneys' fees into different categories. This is not the case. Although the court did not award F & D the

portion of National's attorneys' fees that pertained to litigation involving F & D, that was a separate category of damages. *See Royal College Shop v. Northern Ins. Co.*, 895 F.2d 670, 675 (10th Cir.1990) (explaining that liquidated damage amounts do not become unliquidated simply because the plaintiffs request additional unliquidated damages). Hartford never disputed the amount of National's attorneys' fees; instead, its position was that it was not liable for separate categories of the damages. Thus, the attorneys' fees were fixed and certain and, consequently, were liquidated.

3. Although F & D points out that Mr. Quatman's invoices were due upon receipt, until National paid Mr. Quatman's invoices National did not incur any damages attributable to

claim, Hartford was aware that National would be accruing expenses for attorneys' fees. Accordingly, the prejudgment interest on National's $680,818.13 award for its attorneys' fees in the underlying litigation is $116,287.52.[4]

● Manifest Errors of Law with Regard to the Court's June 26, 2002, Memorandum and Order

In addition to providing the court with additional information so that prejudgment interest could be awarded, in its Rule 59(e) motion F & D also revisits three issues the court addressed in its June 26, 2002, Memorandum and Order. F & D correctly notes that in the Tenth Circuit, a Rule 59(e) motion for reconsideration is the appropriate vehicle to petition the court to "correct manifest errors of law." *Benne v. Int'l Bus. Machs.*, 87 F.3d 419, 428 (10th Cir.1996).

● Prejudgment Interest on the $1,000,000 Award for Damages Caused by Property Damage to the Project

▮ In the June 26, 2002, Memorandum and Order, the court declined to award F & D prejudgment interest on the $1,000,000 award for damages caused by

property damage to the project. F & D now urges the court to reconsider that portion of the court's order not because it believes the claim was liquidated but because "the Court's June 26 Memorandum misapprehends Kansas law and the Court's discretionary authority to make an award of interest even on unliquidated portions of a judgment." In F & D's view, even if a judgment, or a portion thereof, "is unliquidated until trial, the Court nevertheless has discretion to award prejudgment interest thereon under Kansas law." In other words, F & D's position is that a district court is free, in its discretion, to award prejudgment interest on unliquidated claims when it sees fit. The court disagrees.[5]

▮ As the court explained in its June 26, 2002, Memorandum and Order, "the general rule [under Kansas law] is 'that an unliquidated claim for damages does not draw interest until it becomes liquidated-usually by judgment.'" *Kearney v. Kansas Public Serv. Co.*, 233 Kan. 492, 665 P.2d 757, 764 (1983) (quoting *Lightcap v. Mobil Oil Corp.*, 221 Kan. 448, 562 P.2d 1, 15 (1977)). F & D correctly points out that an exception to the general rule exists. In *Lightcap*, the Kansas Su-

---

Hartford's breach. Thus, the court concludes that it is equitable for prejudgment interest to accrue from the date that Mr. Quatman's invoices were actually paid by National.

4. In accordance with K.S.A. § 16–201, the court calculated the interest at a rate of ten percent (10%) per annum from the date the invoices were paid until the date of judgment, June 26, 2002.

5. F & D's papers, quoting *Blair Constr., Inc. v. McBeth*, 44 P.3d 1244, 1252 (Kan.2002), state the following proposition: "An award of prejudgment interest on an unliquidated amount is 'subject to reversal only upon a showing of abuse of discretion.'" While the quoted portion of this excerpt is correct, F &

D's statement preceding the quote places the quote out of context. *Blair* merely states the standard of review from an award of prejudgment interest made under appropriate circumstances: "Allowance of prejudgment interest is a matter of judicial discretion subject to reversal only upon a showing of abuse of discretion." *Id.* at 1251–52. F & D's characterization misleads the reader into thinking that *Blair* addresses an unliquidated claim for prejudgment interest. This is not the case. In *Blair*, the Kansas Supreme Court states that "the claim was liquidated and the trial court did not abuse its discretion in awarding prejudgment interest." *Id.* at 1252.

preme Court explained that when equitable principles so require, the court, in its discretion, may permit prejudgment interest on an unliquidated claim. 466 P.2d at 16. This exception, however, has been limited to situations where prejudgment interest is not simply awarded to make the injured party whole; but rather, where there are unusual circumstances making it equitable to allow for such an award. For example, in *Lightcap* the Kansas Supreme Court determined that prejudgment interest was appropriate only on the portion of the award that the defendant told the plaintiff it would hold for it in a segregated account but then used for its personal gain by either investing it or using it in its business. 562 P.2d at 15. As the Supreme Court later stated in *Farmers State Bank v. Production Credit Assoc. of St. Cloud,* 243 Kan. 87, 755 P.2d 518, 528 (1988), "we held [in *Lightcap*] the district court has the discretion to award prejudgment interest on an unliquidated claim when the defendant has had use of the money, the plaintiff has been deprived of the use of the money, and the order is necessary to award full compensation." *Id.* Similarly, in *Farmers State Bank* the Kansas Supreme Court upheld an award of prejudgment interest where the defendant was an unsecured creditor who received proceeds from a private sale of cattle despite having knowledge that the plaintiff was a secured party that had an unperfected security interest in the cattle. *Id.* at 526–28. Again, in that case the key fact was that the defendant had knowledge that it possessed money that rightfully belonged to another.

In contrast with *Lightcap* and *Farmers State Bank,* the Kansas Supreme Court has made it clear that ordinarily prejudgment interest is not appropriate. For example, in *Kearney,* 665 P.2d at 757, the

Supreme Court declined to overturn the district court's decision not to award prejudgment interest stating that the plaintiffs' reliance on *Lightcap* is misplaced because there "are no unusual circumstances in the present case which would justify prejudgment interest on the unliquidated claim of plaintiffs." *Id.* at 769. *Kearney* involved claims against the Kansas Public Service Company by residents of Lawrence, Kansas who were injured by a natural gas explosion. *Id.* at 763. The Tenth Circuit has followed similar reasoning. In *Royal College Shop,* 895 F.2d at 670, the Tenth Circuit declined to overturn the district court's decision not to award prejudgment interest on the unliquidated portion of an award. In that case, the plaintiff was an insured party who brought a claim against his insurance company when it refused to pay a claim he filed. *Id.* at 672. After the district court found in favor of the plaintiff but declined to award prejudgment interest, both parties appealed to the Tenth Circuit. The plaintiff alleged that the district court erred in failing to award prejudgment interest on any of his damages. *Id.* at 673. The plaintiff's damages included $165,000 for lost inventory, $90,000 for lost earnings, $288,150 for the loss of business, $24,749.44 for damage to his one-quarter interest in the building, and $35,000 for damage to personal property. *Id.* The parties stipulated to the latter two categories of damages. *Id.* With regard to those two categories of damages, the Tenth Circuit reversed the trial court, finding that prejudgment interest should have been awarded because the claims were stipulated to and, thus, liquidated. *Id.* at 675. The Tenth Circuit, however, did not overturn the district court's decision not to award prejudgment interest on the other categories of damages, finding that those damages amounts, including the inventory and lost earnings

losses, were "hotly contested" and, therefore, "unliquidated claims because they were not fixed or certain." *Id.*

In sum, the court agrees with F & D that the Kansas Supreme Court has carved out an exception to the general rule that prejudgment interest is not appropriate for unliquidated claims. The court, however, disagrees with F & D's characterization of the scope of that exception.[6] The court does not believe that a district court has discretion to award prejudgment interest on garden variety unliquidated claims like those in *Kearney* and *Royal College Shop*. Instead, prejudgment interest is appropriate only in unusual and limited circumstances like those that occurred in *Lightcap* and *Farmers State Bank*.[7] In those two cases the defendant kept and made actual use of money that it was aware belonged to the plaintiff, causing the plaintiff to lose the use of his or her money. In that limited situation, the Kansas Supreme Court has explained that equitable principles permit the district court, in its discretion, to award prejudgment interest on unliquidated claims.

The facts of this case are analogous to the situation in *Royal College Shop* and, therefore, prejudgment interest is not appropriate on the $1,000,0000 award for damages caused by damage to the property.[8] Like *Royal College Shop*, this case involves an ordinary insurance coverage dispute; the parties differed as to the amount of damage that was covered by insurance. Therefore, the circumstances here are not "unusual" such that the court should deviate from the general rule that prejudgment interest is not appropriate for unliquidated claims.[9] *Kearney*, 665 P.2d at 757 (holding that there are "no unusual circumstances in the present case which would justify prejudgment interest on the unliquidated claims of plaintiffs."). Accordingly, plaintiff's motion to alter or amend the judgment is denied as to this issue.

● F & D's Defense Costs in the Underlying Action

In the June 26, 2002, Memorandum and Order, the court declined to award F & D

---

6. Perhaps F & D's position rests on the mistaken assumption that Kansas law has the same standard for awarding prejudgment interest as the federal common law. This is not the case. As explained above, it is clear that under Kansas law the general rule is that prejudgment interest is not appropriate for unliquidated claims. In contrast, federal common law is more lenient on awarding prejudgment interest. The Tenth Circuit has stated that "prejudgment interest normally should be awarded on successful federal claims." *FDIC v. UMIC, Inc.*, 136 F.3d 1375, 1388 (10th Cir.1998).

7. If the court were to follow F & D's logic, the exception would swallow the rule. F & D's sole basis for awarding prejudgment interest is that "Hartford would receive a windfall if it were permitted to make use of the $1,000,000 it should have paid on this loss, without being required to account for the time value of that money." Under such reasoning, prejudgment interest would be appropriate on nearly every unliquidated claim because it is almost always the case that the plaintiff loses the use of the money that he or she is later awarded. Such a result is one of the consequences of litigation and the Kansas Supreme Court's interpretation of K.S.A. § 16–201 permits reimbursement for such a loss only when a claim is liquidated or under the special circumstances it has articulated.

8. As the court explained in its June 26, 2002, Memorandum and Order, the damage caused by property damage to the project was disputed and, therefore, unliquidated. F & D does not contest this finding.

9. The court notes that even if it did have discretion to award prejudgment interest on the unliquidated portion of F & D's damage award, the court would decline to do so for the reasons previously stated.

damages for the attorneys' fees that it incurred in the underlying action. F & D now asks the court to reconsider that portion of the court's order, asserting that "[a]lthough Kansas has apparently not decided this issue, the Court's conclusion on this point is contrary to the majority rule that the Kansas Supreme Court would likely adopt." In support of that position, F & D quotes a District of Delaware case, *Oliver B. Cannon and Son, Inc. v. Fidelity & Cas. Co.*, 519 F.Supp. 668, 676 (D.Del. 1981), for the proposition that "[i]t is not necessary that the insured show that it paid out any funds as the result of the insurer's breach of duty." The court does not dispute that *Cannon* is the majority view regarding whether an insured must pay its own attorneys' fees in order to be reimbursed by the insurer if the insurer breaches its duty to defend. That is not the situation here, however. F & D, of course, is not the insured. In short, F & D's position must be rejected because it attempts to patch together two wholly independent and unrelated lines of cases.

A brief review of F & D's argument and the court's resolution of the issue will help to clarify the court's point. In its previous papers, F & D urged the court to adopt the reasoning of *Merrick Const. Co. v. Hartford Fire Ins. Co.*, 449 So.2d 85 (La. Ct.App.1984). As the court explained in its June 26, 2002, Memorandum and Order:

▇ *Merrick*, therefore, stands for the proposition that the insurer has a duty to indemnify its insured for the expenses incurred by the insured to defend its surety if the expenses are covered by the general liability policy. The duty to indemnify runs only to the insured and only for the insured's damages that fall under the general liability policy. Implicit in the court's reasoning in *Merrick* is the notion that the insured must actually pay for the surety's legal fees; otherwise, the insured has not suffered the requisite damage to trigger coverage under the policy.

▇ Put another way, the holding in *Merrick* merely applies the basic principle that an insurer must indemnify its insured for any damage to the insured that is covered under the insured's insurance policy. In *Merrick*, because the insured was required to pay its surety's attorneys' fees in accordance with an indemnification agreement and those costs were covered under the parties' general liability policy, the court concluded that the insurer must indemnify its insured for those expenses.

In the June 26, 2002, Memorandum and Order, this court explained that it did not need to reach a conclusion as to whether the Kansas Supreme Court would adopt the reasoning in *Merrick* because the case is factually distinguishable from the situation here. Specifically, the court explained that *Merrick* does not help F & D because National, the insured, did not pay for its surety, F & D's, legal fees. Thus, National had no damages that would trigger Hartford's duty to indemnify National under the insurance policies.

F & D now attempts to alter the reasoning in *Merrick* and treat the decision as a duty to defend case in which the insured seeks reimbursement for its own attorneys' fees. If that were the case, then F & D's reliance on *Cannon* would be valid. *Cannon* involved a situation where the insurer breached its duty to defend its insured. 519 F.Supp. at 674. Needing to hire an attorney to defend it and bring a lawsuit against its insurer for breach of the duty to defend, Oliver B. Cannon and Son, Inc. ("Cannon") reached

an agreement with an attorney that it did not have to pay the attorney's legal fees unless it recovered from the insurance company, Fidelity. *Id.* When a claim was brought against the insurer to recover the funds Cannon believed were covered by the insurance policy, Fidelity argued that Cannon's arrangement with its lawyer precluded Cannon from bringing a claim for attorney's fees despite the fact that Fidelity breached its duty to defend it. *Id.* The court rejected that argument explaining that "[t]o adopt such a rule would have the effect of allowing Fidelity, the insurer, the alleged wrongdoer, to receive a windfall because of the independent efforts of Cannon, the insured, to limit its own liability for fees in the face of the insurer's breach of its duty to defend." *Id.* at 675. Thus, *Cannon* is grounded on sound public policy, as F & D points out, because when an insured's insurance company refuses to defend it, an avenue must exist to obtain an attorney to bring a claim against the insurance company. Additionally, if the insured were not permitted to recover attorneys' fees, the insurance company would have everything to gain and nothing to lose by declining to defend the insured.

The distinguishing facts in *Cannon* and *Merrick* illustrate the flaw in F & D's position. In contrast with *Cannon, Merrick* implicates the duty to indemnify; it is not a duty to defend case. An insurer does not have an obligation to defend the insured's surety simply because the insured happens to have an independent agreement to indemnify its surety for any attorneys' fees the surety incurs. Thus, the policies that underscore *Cannon* do not apply to *Merrick* or the situation here. In fact, it is F & D that would receive a windfall if Hartford were required to pay F & D's attorneys' fees. F & D bargained away its right to require National to pay F

& D's attorneys' fees in accordance with the parties' indemnification agreement in exchange for an assignment of National's rights to bring this lawsuit against Hartford. If F & D recovers its attorneys' fees from Hartford, then F & D gave up nothing in exchange for its right to bring this lawsuit. The court, therefore, concludes that *Cannon* does not support F & D's position, and F & D cannot recover because National did not actually pay F & D's attorneys' fees. Accordingly, F & D's motion to alter or amend the judgment is denied as to this issue.

● Attorneys' Fees for Prosecuting the Current Action Pursuant to K.S.A. § 40–256

In the June 26, 2002, Memorandum and Order, the court declined to award F & D its attorneys' fees for prosecuting the current action. In addition to filing the instant motion to preserve its claim for appeal by complying with Rule 59(e), F & D also alleges that "the Court's June 26 Memorandum misapprehends the legal standard that governs a claim for attorneys' fees under K.S.A. § 40–256." Specifically, F & D argues that under the plain language of the statute, Hartford should be required to pay F & D's attorneys' fees because Hartford "had no reason to believe it could avoid its duty to defend on the basis that there was no possibility of coverage." As Hartford points out in its response, F & D's position wholly ignores the court's analysis and citation to the Tenth Circuit's decision in *Glickman, Inc. v. Home Ins. Co.,* 86 F.3d 997 (10th Cir.1996) ("Under the plain language of § 256 there is no separate and stricter standard for refusals to defend.") In its reply brief, F & D explains that it believes that *Glickman* "is contrary to the Kansas courts' construction of K.S.A. [40–]

256 ...." F & D concedes that *Bowlus Sch. Supply v. Swartz*, 766 P.2d 204 (Kan. Ct.App.1988), an unpublished opinion of the Kansas Court of Appeals decided before *Glickman* and discussed therein, is the only Kansas appellate court decision to address the issue. Nonetheless, F & D believes that the Kansas Supreme Court has recently construed K.S.A. § 40–256 broadly, thus calling into question the continued validity of *Glickman*.

F & D's position contains two separate arguments. First, F & D believes that the Tenth Circuit's reading of K.S.A. § 40–256 in *Glickman* is contrary to the Kansas courts' construction. Second, F & D believes that two subsequent Kansas Supreme Court decisions have cast doubt on whether *Glickman* properly predicted how the Kansas Supreme court would decide the issue. As to the first argument, F & D is free to appeal to the Tenth Circuit and argue that *Glickman* was wrongly decided, but this court is bound to follow it. As to the second argument, the court is not persuaded that subsequent Kansas Supreme Court decisions call into question *Glickman's* continued validity. Neither of the two cases F & D relies on, *Moore v. St. Paul Mercury Ins. Co.*, 269 Kan. 272, 3 P.3d 81 (2000) or *Farm Bureau Mut. Ins. Co. v. Kurtenbach*, 265 Kan. 465, 961 P.2d 53 (1998), revisit the issues addressed in *Glickman*. In *Moore*, there was evidence that the insurer refused without just cause or excuse to pay the full amount of the insured's loss; the only issue was the extent of the attorneys' fees to be awarded. In *Farm Bureau*, the Kansas Supreme Court upheld the Court of Appeals decision that attorneys' fees should not be

awarded under K.S.A. § 40–256.[10] Thus, neither of these decisions causes this court to question whether the Tenth Circuit's opinion in *Glickman* has subsequently been called into question by the Kansas Supreme Court. Accordingly, F & D's motion to alter or amend the judgment is denied as to this issue.

IT IS THEREFORE ORDERED BY THE COURT that F & D's motion to alter or amend the judgment (Doc. 72) is denied except as to prejudgment interest on the $680,818.13 award for National's attorneys' fees in the underlying litigation. As to that issue, F & D is entitled to prejudgment interest in the amount of $116,287.52.

---

**10.** The Kansas Supreme Court upheld the Court of Appeals decision to award attorneys' fees but did so based upon its decision in *Upland Mut. Ins., Inc. v. Noel*, 214 Kan. 145, 519 P.2d 737 (1974). As the court in *Glickman* pointed out, *Upland* was premised on contract law, not K.S.A. § 40–256. *Glickman*, 86 F.3d at 1001.